(No. 35217.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* REEVES D. SMITH, Plaintiff in Error.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

GORMAN & DRUGAS, of Chicago, (ROBERT J. GORMAN, of counsel,) for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, and EDWIN A. STRUGALA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Reeves D. Smith was indicted in Cook County and charged with larceny by bailee, larceny of moneys, embezzlement, larceny of checks, and confidence game. A jury trial resulted in a verdict of guilty and a sentence of from one to three years in the State penitentiary was imposed.

The defendant, by this writ of error, seeks a review of the trial proceedings and asserts error in the admission

of evidence relating to earlier, although similar, transactions, and suggests error in the argument of the State's Attorney.

The evidence indicates that for some time prior to 1957 the defendant was a real-estate broker and engaged in business as such in Cook County. In the year of 1957 he commenced operation as a home builder and, in August of that year, contracted with a Mr. and Mrs. Henry Niesman for the construction of a home on a lot in Glenview. The house and lot were to have cost $20,430. The contract was actually signed by the defendant and John Hutter, a relative of the Niesmans, for the reason that Hutter had an established credit rating, whereas the Niesmans, having recently moved from Arizona, did not.

At the time of the signing of the contract the purchasers paid $1,000 down and were to pay an additional $4,000 when a $15,430 mortgage loan at a specified interest rate could be arranged. The transaction was conditioned upon the availability of such a loan to the purchasers.

After signing the contract, application was made to a savings and loan association for a loan and, thereafter, at the defendant's request, an additional payment of $4,000 was made. Subsequent to that payment a further payment of $430 was made to the defendant, leaving a $15,000 balance for financing.

The defendant represented to the purchasers that he had purchased the lot on which the home was to have been constructed and further informed them that the loan had been approved. The purchasers were informed that the $4,000 payment was to be used for the purchase of the lot. The contract between the defendant and the purchasers was signed August 13, 1957.

On the following day the defendant contracted with a real-estate broker representing the owner of the lot for the purchase of the lot at a price of $4,000. At the time of that contract the defendant made a $500 down payment by a postdated check.

On September 6, 1957, the defendant visited with the purchasers, showed them the specifications for the house, and at that time told them that he had purchased the lot for them and that the lot was then theirs. He suggested to them that they should make certain arrangements with reference to trees and shrubberies on the lot that would interfere or be removed in the process of constructing the house.

The savings and loan association made a request of the purchasers for the legal description of the lot and the inquiry was referred to the defendant. He did not supply the description nor evidence of purchase, although, on October 21, 1957, the defendant did submit a survey of the lot to the building and loan ascociation and at about this time further represented to the purchasers that the transaction was proceeding according to his earlier representations.

Further, on October 21, the actual owner of the lot notified the defendant that the $500 down payment had been forfeited for reason of nonperformance of the contract for the purchase of the lot, and the contract for purchase was canceled. Thereafter the purchasers made many efforts to contact the defendant, most of which were unsuccessful, and as a result of such efforts arranged a meeting for October 29 with the defendant and the attorney for the purchasers. At the time of that conference it was learned that the lot had not been purchased, that the loan had not been approved, and that no construction had been undertaken.

The evidence thus demonstrated that the defendant represented himself as engaged in a legitimate home-building enterprise, gained the confidence of Mr. and Mrs. Niesman, that he had urged them to contract with him, that he had made representations to them, and that he obtained moneys from them by reason of the confidence they reposed in his representations.

During the course of the trial evidence relating to other

transactions in which the defendant had been involved was admitted, over objection, as being relevant to show the element of intent.

The first such transaction was with Jerome Popovich, which was initiated in December of 1956. The essence of that transaction was that the defendant obtained a deed, being held in escrow, from the escrow agent after repeated amendments to the escrow agreement, and the final payment to the escrow agent of $2,000 was by a check later returned for lack of sufficient funds. The evidence shown in connection with this transaction was similar to the instant case, as well as to other activities of the defendant.

Another transaction, involving Mitchell Nakagawa, occurring in the spring of 1956, was permitted to be introduced in evidence. In that transaction the defendant, acting as a real-estate broker, obtained a $2,000 down payment on a piece of real estate and later procured an addition to the down payment of another $2,000. The evidence was that the real-estate sale was never concluded, that the purchaser had had the same difficulties in that transaction as the purchasers had experienced in the instant case, and the evidence was further that the defendant had pleaded guilty to a charge of obtaining money by false pretenses and had been given probation in order to make restitution of the funds. The restitution had not been made as of the date of the trial proceedings.

It is first assigned as error that the court improperly admitted the evidence of these two earlier transactions as being too far removed and not germane to the present case. The defendant here relies on the rule stated in *People* v. *Brewer*, 355 Ill. 348, 353, wherein it is stated: "The general rule is that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. The

rule extends to proof of an accusation of another crime as well as to evidence of its actual commission."

It is further suggested the Nakagawa transaction proved no element of any alleged crime and that such evidence served only to blacken the character of the defendant and may have tended to show a dishonest disposition.

Evidence of prior similar transactions is competent to prove the criminal intent of one accused of violating confidence game statutes. (*People* v. *Brand,* 415 Ill. 329; *People* v. *Lewis,* 17 Ill.2d 403.) The evidence here admitted involved transactions that followed one another in the business enterprises and dealings of the defendant, in all of which the obtaining of money by false representations was involved. As we have stated in the case of *People* v. *Epping,* 17 Ill.2d 557, in an opinion filed at the November, 1959, term, financial crimes that are complex and involved are of a type that particularly lend themselves to proof of similar crimes by the defendant concurrently with the crime charged and that evidence of similar transactions is admissible to show specific intent or guilty knowledge. The two transactions admitted in evidence here and about which the defendant complains were substantially similar to the circumstance existing in the present transaction, tend to prove the element of intent, and were admissible for that purpose.

The evidence in this case clearly established that the defendant was a marginal operator. Necessarily, the scheme that he was promoting was one wherein he sought to escape trouble in the concluded transaction by obtaining money in an instant transaction. The proof of the two transactions that was permitted to be shown demonstrated that the defendant was aware of and calculated the risks involved in his enterprises. His operation was something more than a business failure for which he would incur only civil liability.

In the *Brand case* above cited, we stated that admission of similar prior offenses was permissible but could be con-

sidered by the jury only in determining the intent of the accused. In the event that such evidence is offered, no affirmative duty rests on the court to admonish or instruct the jury except in the case where the defendant affirmatively requests such admonition.

The record in the instant case demonstrates to us that the two earlier transactions were shown for the narrow purpose of proving intent and it cannot be said that they were established or proved with the same detail as if the defendant were on trial for those offenses. Neither of them was too far removed from the present transaction involved here, and both were germane to it.

The defendant finally complains that the trial judge improperly examined the defendant in a hostile manner so as to give the jury the impression that the court felt that the defendant was being devious. In the case of *People* v. *Egan,* 331 Ill. 489, we stated that a trial judge is not a mere moderator or referee and that at any time he has a right to ask questions for the purpose of eliciting the truth, but that in doing so he must so conduct himself as to not give the jury any impression as to the court's feelings. Our review of the record in this case leads us to the conclusion that the questioning by the court was for the sole purpose of eliciting the truth and to make understandable and intelligible certain of the contentions of the defendant. The record is void of any infringement by the trial judge upon the rule stated in the *Egan case.*

Finally, it is suggested that in the closing argument the State's Attorney made improper remarks to the prejudice of the defendant. Our review of the points suggested leads us to the conclusion that the argument employed was fully supported by the evidence and that the argument did, in fact, constitute fair comment upon the evidence. The judgment of the criminal court of Cook County is, accordingly, affirmed.

*Judgment affirmed.*