THE. PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT NORFLEET *et al.,* Defendants-Appellants.

(Nos. 54532-54535 cons.; ▮▮▮▮▮▮▮▮▮▮

First District—March 24, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Armed robbery. Ill. Rev. Stat. 1967, ch. 38, par. 18.2.

*JUDGMENT*

After a jury trial, all four defendants were found guilty and were sentenced to the following terms in the penitentiary: Joseph Blakely, 20 to 40 years; Arthur Blakely, 10 to 20 years; Willie Rutledge, 8 to 15 years; Robert Norfleet, 5 to 10 years.

*POINTS RAISED ON APPEAL*

Defendant Norfleet, in a separate appeal, contends he was not proved guilty beyond a reasonable doubt.

All defendants contend:*

1. The pre-trial identification procedure was unnecessarily suggestive and deprived defendants of due process of law.

2. The in-court identifications were inadmissible as not being based on observations of adequate independent origin.

3. The trial court erred in admitting evidence of an unrelated crime.

4. The sentences were excessive.

*EVIDENCE*

*Clarence Mills,* for the State:

He is a bus driver for the Chicago Transit Authority. On October 7, 1968, at approximately 10:30 P.M., four black male passengers boarded his bus at 5th Avenue and Pulaski in Chicago, and refused to pay. Also on the bus at the time was James Springfield, a uniformed security guard for Interstate Corporation whose employment required him to carry a revolver. Through a rear view mirror, the witness observed two of the men, later identified by him in court as defendants Joseph and Arthur Blakely, approach Springfield, knock him to the floor, and take his gun and glasses. Joseph Blakely then said, "I'm going to kill this security guard and the bus driver." Arthur said not to shoot, and, instead,

---

* Defendants Joseph Blakely, Arthur Blakely and Willie Rutledge filed appeals which were consolidated, and one brief was filed on their behalf. A separate brief was filed in the Norfleet appeal, but the cases were heard together at one oral argument.

directed Joseph to take the driver's money and coin changer. Whereupon, Joseph put the gun in the witness' face, threatened to kill him, and, with the assistance of Arthur, took the money—about $36. The four men left the bus at Central Park and Harrison, about four blocks from where they got on.

That night, between 1:00 and 2:00 A.M., he attended a line-up at the police station and identified Arthur and Joseph Blakely in a line-up of seven men. He could not make a positive identification of the other two men who had been on the bus, but he was positive as to the Blakelys as he had two or three minutes to observe them on the bus.

At the police station, his money changer was returned to him empty.

*James Springfield,* for the State:

He is a security guard who corroborated the testimony of Mills as to the occurrence on the bus, and added that one of the men had a gun before they took witness' gun from him. He further testified that it was Joseph Blakely who took the witness' gun and Arthur Blakely took his glasses. He, too, went to the line-up later that night and both then and in court he identified both Blakelys and Rutledge. He remembered testifying before the grand jury that he had identified all four of the men at the police station. At the police station his glasses were given back to him (and witness' gun was introduced into evidence on the identification testimony of his employer).

*Mary Harris,* for the State:

On October 7, 1968, between 10:45 and 11:00 P.M., she was driving a 1960 white Cadillac approximately a block and a half from the corner of Central Park and Harrison in Chicago. While parking the car in front of her home there, a man walked around the front of her car, approached the driver's side, and forced her at gun point to get out of the car. One of the men who came up to the car said to shoot. She and her son, who was with her, left the car and ran toward her house. At the trial, she identified the man with the gun as Joseph Blakely.

*Ulysses Harris,* for the State:

On October 7, 1968, between 10:45 and 11:00 P.M., he was with his mother in a 1960 white Cadillac in front of his home. He was 17 years of age and attended Marshall High School at the time. He watched a man holding a gun cross through the headlights of the car, approach his mother's side, and tell her to get out of the car. As the witness stepped out of the car on his own side, three other men approached him from across the street. He identified Joseph Blakely as the man with the gun and Norfleet and Arthur Blakely as two the other three. It was Norfleet who told Joseph Blakely to shoot the Harrises. Although no shots were

ever fired, Ulysses Harris ran around to the driver's side, helped his mother out of the car, and fled with her to their house. The entire incident took only a few minutes.

Harris stated that the area was well lighted by street lights and the headlights of the car.

At the trial, Harris identified the Blakelys and Norfleet, but could not make positive identification of Rutledge. All he could recall about the fourth man was that he had a natural, with a lot of hair. At the police station he had identified four men, but he wasn't sure of the fourth. Their Cadillac was returned to them at the police station.

*John Makar,* for the State:

He is a police officer. At approximately 11:30 P.M. on October 7, 1968, he received a report on his squad car radio about a white 1960 Cadillac. He observed a car which matched that description going east on 45th Street with four men in it. He followed the car with siren and blinking lights for about two blocks at 50 miles an hour, when the car stopped and the occupants fled down an alley. He then placed a call to other cars for assistance. He drove his squad car into the alley and saw Arthur Blakely running across a vacant lot. He turned the car into the lot and put Blakely in the headlights of his squad car. He and his partner then jumped from their car and arrested him.

Officer Carroll, who had responded to Makar's call for help, had cornered Joseph Blakely in a nearby building. Makar went there and arrested Joseph Blakely in the hallway. He recovered the gun and glasses, which were identified as belonging to James Springfield, and a coin changer belonging to Clarence Mills. Officers Carroll and Krause arrested Rutledge and Norfleet.

At trial, Makar testified that one of the men who fled from the car was wearing a black leather jacket.

*Alex Pikowski,* for the State:

He is a police officer and partner of Makar at the time in question. He corroborated Makar's testimony of the chase and arrest of Arthur Blakely whom he then took to the squad car where he stayed while the other officers pursued the other three men.

*Robert Krause,* for the State:

He is a police officer who was on patrol on the evening in question, when he received a radio message from Officer Makar asking for assistance in the arrest of four men who were fleeing down an alley in the 4400 block of S. Ashland Avenue. He drove his car into the alley and saw the defendants Joseph Blakely, Rutledge and Norfleet running toward him. He stopped the car, chased defendants Rutledge and Norfleet into a vacant lot, and arrested them. The defendants threw coins

toward the street as they fled across the lot. At the time of the arrest, Norfleet was wearing a black leather jacket.

## OPINION

The defendant Norfleet contends that he was not proved guilty beyond a reasonable doubt, based essentially on the fact that he was not identified by anyone on the bus. While it is true that nobody on the bus identified Norfleet, the other three defendants were identified by either Springfield or Mills as part of the group of four who committed the robbery on the bus. And this highlights the importance, the relevancy, and affects the admissibility of the Harrises' testimony by which Norfleet was clearly identified as one of the group of four. This was done chiefly through the testimony of Ulysses Harris who not only positively identified Norfleet as one of four men who stole the family car a very short time after the robbery in the bus and only a block and a half away, but he also identified Norfleet as the one who told Joseph Blakely to shoot the Harrises, and thus demonstrated that Norfleet's association with the other defendants was not coincidental.

When Officer Makar attempted to stop the stolen Harris auto, he testified that a man wearing a black leather jacket, matching Norfleet's description, was seen fleeing from the car down the alley. At the other end of the alley, the officers arrested three of the defendants, among them Norfleet, who was wearing a black leather jacket.

■■ The evidence taken as a whole well establishes beyond a reasonable doubt Norfleet's participation in the common plan, thus making his guilt equal to that of others who may have assumed a more active role in the robbery on the bus. See *People v. Clark*, 30 Ill.2d 67, 72, 195 N.E.2d 157, and *People v. Washington*, 26 Ill.2d 207, 209, 186 N.E.2d 259.

It is the contention of all defendants that the pre-trial identification procedure was unnecessarily suggestive and deprived defendants of due process of law.

The record discloses that a police line-up was conducted in the early morning hours shortly after defendants were arrested.

■■ All of the witnesses to crimes of which defendants were suspected were placed together in the same room. At that time, they were given police regulations about not talking to one another while waiting for the line-up to begin. Although the Harrises stated that the witnesses discussed events which had occurred that day, they said that no one discussed the description of any defendant. Individually, each witness was led to view the line-up and, if he made an identification, was separated from the others and advised not to speak with anyone about the identification.

We find that the grouping of witnesses together before being permitted individually to view the line-up does not violate the holdings in *Gilbert v. California*, 388 U.S. 263, or *United States v. Wade*, 388 U.S. 218, as to group identification. On the contrary, the police carefully avoided the procedure proscribed by these cases.

We see no reason to require that witnesses to various crimes be isolated in separate rooms scattered throughout the police station to assure a proper identification at the line-up. From the procedure followed in this case, it appears that the danger of infecting an entire group of witnesses with a frenzy of suggestive identification, as mentioned in *Gilbert, supra*, has been avoided.

■■■ Defendants also contend that the line-up was prejudicially unfair because each witness was told that his property had been recovered, thereby suggesting that some of those in the line-up were the ones who had taken it. We find this contention also without merit. Whenever a victim is asked to come to a police station in an attempt to identify a suspect, there is an unavoidable inference that someone in the line-up is believed by the police to be the person who committed the offense. (*People v. McIntosh*, 82 Ill.App.2d 90, 94, 227 N.E.2d 76, 78.) Also, the complaint that there were considerable differences in size, age and appearance between suspects and others in the line-up goes to the weight of the evidence and not to its admissibility. *People v. Terczak*, 96 Ill. App.2d 373, 378, 238 N.E.2d 626, 629.

■■ Defendants' next contention is that each defendant was entitled to a separate line-up because the grouping together of all defendants in the same line-up was unfairly suggestive. In the present case, the line-up was composed of seven people, each defendant being separated by a stranger. *Stovall v. Denno*, 388 U.S. 293, held that only where the confrontation between witnesses and suspect is "so unnecessarily suggestive and conducive to irreparable mistaken identification" will the judgment be questioned as a violation of due process, and that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *."

A careful consideration of the total circumstances in this case shows full compliance with due process at the line-up. Only one defendant, Joseph Blakely, was identified by all four witnesses. And only one witness picked all four defendants, with one of those a qualified identification. Furthermore, none of the witnesses picked any of the nondefendants, even though they were close in age and height to some, if not all, of the defendants.

■■ Defendants' next contention is that the in-court identifications were

tainted by the improper line-up procedure. As we have found nothing improper about it, the point must fall, but even if the line-up confrontation had been tainted, there was clear evidence, as to all defendants, of prior adequate opportunity for identification of independent origin upon which to base the witnesses' in-court identifications. This is all that is required. See *People v. Cook*, 113 Ill.App.2d 231, 236, 252 N.E.2d 29, and cases there cited; also, *People v. McMath*, 104 Ill.App.2d 302, 244 N.E.2d 330, affirmed 45 Ill.2d 33, 256 N.E.2d 835, *cert. den.* 400 U.S. 846.

Defendants' next contention is that the trial court erred in admitting evidence of the Harris stolen car episode which they claim is a prejudicially unrelated crime.

■■ The general rule is that evidence of other crimes committed by a defendant is inadmissible when independent of or disconnected from the crime with which he is charged. (*People v. Cage*, 34 Ill.2d 530, 533, 216 N.E.2d 805, 806.) One of the well-recognized corollaries to the rule, however, permits the admission of evidence of another crime if it serves to place a defendant in proximity as to the time and place of the crime charged, or aids in the establishment of identity. In applying this principle, the court must determine "whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried." (*People v. Tranowski*, 20 Ill.2d 11, 16, 169 N.E.2d 347, 349.) Particularly, as to admissibility for the purpose of identifying an accused as the perpetrator of the crime charged, see *People v. Jennings*, 252 Ill. 534, 544, 96 N.E. 1077, 1080—81; and *People v. Walker*, 34 Ill.2d 23, 29, 213 N.E.2d 552.

■■ This case falls within the exceptions to the general rule. The testimony of Ulysses Harris establishes that there were three persons with Joseph Blakely at the time and place where the car was stolen in close proximity in both time and place to the bus robbery. There were four assailants on the bus, but only three were identified by the driver and the security guard. Harris' identification of the fourth, Norfleet, therefore completes the identification of all four robbers and was properly admitted as tending to prove that the same four defendants committed the robbery on the bus. (See *People v. Walls*, 96 Ill.App.2d 360, 362, 239 N.E.2d 291, and *People v. Tranowski, supra.*) Harris' testimony clearly placed Norfleet with the other three in connection with the stealing of the Cadillac, and his evidence was strongly corroborated by that of the police who made the arrest.

The attempted use of the Cadillac as an escape vehicle is obvious, and the two incidents were so closely related that evidence of the second is relevant and admissible as tending to prove the first, even though it

may incidentally prejudice defendants by tending to prove a second crime also.

Defendants argue that the ruling in *People v. Fuerback*, 66 Ill.App.2d 452, 214 N.E.2d 330, should be followed in the present case. However, *Fuerback* is distinguishable by the fact that there, the evidence of another crime was introduced to refute defendant's alibi and not as direct proof to establish proximity, identity, intent, motive, or a common scheme or design. *People v. Akins*, 98 Ill.App.2d 281, 284, 240 N.E.2d 237.

■■ Finally, defendants contend that their sentences are excessive. However, we find in this record no mitigating circumstances which establish a manifest abuse of discretion, and we will therefore not substitute our judgment for that of the trial court. *People v. Nelson*, 41 Ill.2d 364, 367, 243 N.E.2d 225, 228; *People v. Bonner*, 37 Ill.2d 553, 563, 229 N.E.2d 527, 533.

The judgments and sentences are affirmed.

Judgments affirmed.

LORENZ, P. J., and DRUCKER, J., concur.