THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR BLAKELY, Defendant-Appellant.

(No. 54885;

First District—September 29, 1972.

*Rehearing denied November 16, 1972.*

Gerald W. Getty, Public Defender, of Chicago, (Judith C. Smith and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Armed robbery against Arthur Blakely, Joseph Blakely, Robert Norfleet and Willie Rutledge. Ill. Rev. Stat. 1967, ch. 38, par. 18—2.

*JUDGMENT*

After a jury trial, Rutledge was found not guilty and the other three guilty. Arthur Blakely (hereafter "defendant") has appealed. He was sentenced to a term of 12-18 years consecutive to a prior sentence of 10-20 years.

*CONTENTIONS RAISED ON APPEAL*

1. Defendant was not proved guilty beyond a reasonable doubt since the jury returned a compromise verdict finding defendant guilty and a co-defendant not guilty on the same evidence.

2. The admission of testimony of a prior unrelated crime prejudiced defendant in the eyes of the jury and is reversible error.

3. The court's imposition of a consecutive sentence was an abuse of discretion.

This is the third appeal to reach this court which concerns facts and circumstances which occurred during little more than one hour on the evening of October 7, 1968. The other two opinions, *People v. Norfleet*, 4 Ill.App.3d 758, 281 N.E.2d 761, and *People v. Blakely*, 7 Ill.App.3d 1012, involved the first two incidents and are helpful for a complete understanding of this case. The questions surrounding the third incident are raised by this appeal.

*EVIDENCE*

*Wieslawa Krzysiak,* for the State:

She had come to the United States from Poland approximately a year before, and did not understand English. On October 7, 1968, she was working in Sophie's Tavern at 4654 South Honore in Chicago. At about 11:00 P.M., four Negro men entered the tavern and approached the bar. One man, later identified as Joseph Blakely, took a gun from his pocket, but this defendant, his brother, grabbed it from him and began to pat down the customers looking for money. The customers were then told to lie on the floor, and defendant told the witness to come from behind the bar or he would shoot her. Since she didn't understand English, she

did not respond as he directed, so defendant came behind the bar and pushed her to the floor. She looked up to see him taking money from the cash register and going through various drawers. Robert Norfleet told her to turn away or he would shoot her in the head. A customer in the tavern translated what he said into Polish.

A customer came in and the defendants ran. She did not actually see them leave. About two or three hours later at the police station she picked out four defendants from a seven-man lineup. She also identified the gun used in the robbery as similar to the one introduced at trial.

*Thomas Kucharzyk,* for the State:

He arrived at Sophie's Tavern about 10:30 on the evening of October 7, 1968. About 45 minutes later, four Negro men entered the tavern. Defendant approached him at the bar and told him it was a stick-up. When the woman bartender started to run, defendant went after her, and the witness pleaded with her in Polish to lie on the floor or they would shoot her. While he was lying on the floor, one of the defendants took $9 from his pocket. Shortly after the men left, he called the police and about two hours later identified all four defendants at a lineup in the police station.

*Joe Wisz,* for the State:

It was stipulated by defense and prosecution that Joe Wisz was a patron at the tavern at the time of the robbery but was unable to identify any of the defendants.

*John Makar,* for the State:

He is a police officer who, with his partner, Alex Pikowski, was driving south in their unmarked car in the 4400 block of Honore Street during the evening of October 7, 1968. He observed a white Cadillac approaching them in a northerly direction at a high rate of speed. The car turned east on 45th Street and they followed. At that time he heard a radio call that a robbery had just been committed by four Negroes at a nearby tavern. He chased the car for about two blocks at 45-50 miles per hour, and put in a radio call for help.

At 45th and Marshfield the car stopped and was abandoned by four male Negroes. He drove his car into the alley and put a man, later identified as defendant, in his headlights. Then he left his car and chased defendant on foot across a vacant lot. When he called out "Police Stop," defendant stopped and was arrested. He searched defendant and recovered two bottles of whiskey and 39 one dollar bills. He also assisted in the arrest of Joseph Blakely and recovered a CTA coin changer and a weapon from him. He knows the location of Sophie's Tavern and was only two blocks from it when he gave chase to the speeding Cadillac.

*Alex Pikowski,* for the State:

He is a police officer who corroborated the testimony of his partner, John Makar, concerning the arrest of defendant.

*Robert Krause and Donald Carroll,* for the State:

They are also Chicago police officers who assisted in the arrests of defendants Rutledge, Norfleet and Joseph Blakely after responding to Officer Makar's call for assistance. Their testimony corroborated that of Makar and Pikowski.

*Clarence Mills,* for the State:

He is a bus driver for the Chicago Transit Authority. At approximately 10:00 P.M. on October 7, 1968, four men boarded his bus at Fifth Avenue and Pulaski. They refused to pay the fare and, after a few minutes, attacked a uniformed security guard who was the only other passenger on the bus. They took the guard's service revolver, and one of the defendants later identified as Joseph Blakely, threatened to kill both the driver and the security guard, but defendant intervened. Joseph Blakely then took the driver's money and coin changer and all four men left the bus at Central Park and Harrison about 15 minutes after the incident began. He identified the gun as resembling the one taken from the security guard and was able to identify his coin changer.

*Marvin Woods,* for the State:

It was stipulated that if he were called as a witness, he would testify that he was a supervisor in a security guard company and had issued to James Springfield, the guard involved in the bus incident, the same service revolver which was later recovered from Joseph Blakely at the time of his arrest.

*Joseph Blakely,* on his own behalf:

At about 7:00 P.M. on October 7, 1968, he was standing on the corner at 47th and Ashland in Chicago waiting for a bus when two police officers pulled up and told him to get in the car. When he asked why, he was sprayed in the face with mace. One of the officers was John Makar. He was taken to the police station at 35th and Lowe where he was beaten, kicked and maced by the police officers. The other defendants were brought to the police station later. Five people were put in a lineup and he was wearing a red jacket, purple pants, and a green shortsleeve jersey. He hadn't seen his half-brother, Arthur Blakely, for five or six years, and didn't even know he was in town. He had never seen any of the victims or witnesses before.

Defendant Arthur Blakely did not testify.

*OPINION*

Defendant claims, in effect, that he was entitled to be found not guilty because a co-defendant, Rutledge, was found not guilty. The identifica-

tion testimony in this case was extremely important, and the jury might well have found the evidence against Rutledge enough weaker than that against the other three defendants to have raised a reasonable doubt. In any event, it was a jury question, resolved by the jury in favor of Rutledge, and defendant in this case is not in a position to take advantage of that fact. See *People v. Rogers,* 16 Ill.2d 175, 182-183, 157 N.E.2d 28 and *People v. Rohwedder,* 78 Ill.App.2d 211, 213, 223 N.E.2d 1.

■■ Defendant argues that the trial court erred when it admitted, over counsel's objection, evidence of defendant's involvement in what he believes is an unrelated prior crime. Specifically, he objects to the testimony of Clarence Mills and Marvin Woods. Mills identified defendant as one of four men who robbed his bus almost an hour before the instant crime, at a location five and one-half miles away, and with a gun taken from one of his passengers, which gun resembled the gun in evidence in the instant case. Woods, by stipulation, would have testified that the gun in this case was the very same one which he, as a security supervisor, had issued to one of his guards who had it taken away from him on Mills' bus.

The State maintains that this testimony served to aid in the identification of defendant, and demonstrated that defendant possessed the ability to commit the armed robbery by tracing the weapon from the security guard on the bus to the tavern robbery about an hour later.

■■ In general, the admission of evidence concerning a distinct substantive offense to support the offense charged, is so prejudicial as to constitute reversible error. (*People v. Gleason,* 36 Ill.App.2d 15, 183 N.E.2d 523.) However, in *People v. Norfleet,* 4 Ill.App.3d 758, 281 N.E.2d 761, we applied well-recognized exceptions to the rule which allow the use of evidence of another crime when it aids in identifying defendant or places him in close proximity as to time and place of the offense charged.

■■ The State urges that we follow our earlier decision in *Norfleet, supra.* However, we believe that the relationship of the incident on the bus to the theft of the get-away Cadillac is quite different from its relationship to the robbery of the tavern. As we said in *Norfleet, supra,* the car was used as a means of escape from the scene of the bus robbery which had occurred only minutes before and in the same general vicinity. Here, the tavern hold-up was almost an hour later and more than five miles away. The State argues that Mills' testimony about the bus was necessary to identify the Blakelys as the same men who robbed the tavern. We fail to see how evidence of the first incident aided in proof of the second, especially when the identification of defendant by the bartender and a customer in the tavern was clear, positive and appar-

ently reliable. Attempts by the defense to impeach Wieslawa Krzysiak's testimony by concentrating on her inability to speak or understand English and her lack of exposure to Negroes generally did not shake her identification of defendant. Both she and Kucharzyk had a clear view of defendant during the robbery. When the identity of the defendant can be clearly shown without the use of evidence of another crime, such evidence is inadmissible. The same may be said for Krzysiak's identification of the gun which was in no need of corroboration in the prejudicial manner employed in this case.

Defendant urges that *People v. Fuerback,* 66 Ill.App.2d 452, 214 N.E. 2d 330, and *People v. Butler* (Ill.App.2d), 273 N.E.2d 37, should guide our decision in this case. In *Fuerback,* defendant was charged with armed robbery but offered an alibi covering his whereabouts at the time of the crime. We held that testimony rebutting defendant's alibi was proper but that the court committed error by not excluding those portions of the testimony which evidenced defendant's participation in a separate and distinct crime.

In *Butler,* defendant was charged with rape and robbery. He denied driving the type of car involved in the crimes, but was rebutted by a witness who testified that she had seen defendant in the same model of car five days prior to the crime charged and had been robbed by him at that time. The court, following the reasoning of *Fuerback,* reversed the conviction, stating that the testimony should have been limited to identifying defendant as the person driving the type of car in question and was inadmissible to the extent that it mentioned the prior crime.

We agree with the principle of these two decisions. In the present case defendant offered no alibi and did not testify in denial of the charge against him. His identity had been established before Mills testified about the bus hold-up. Thus, even if Mills' testimony had been limited to identifying defendant as one of four men boarding his bus at a time earlier in the evening and had not mentioned the robbery, its probative value, being only cumulative, would have been questionable. We believe his testimony had no relevance to the commission of the tavern robbery and should have been excluded. Likewise, the testimony of Woods was unnecessary corroboration of another witness' identification of the gun.

The State, however, also argues that Mills' testimony was proper, because it demonstrated that the defendants possessed the ability to commit an armed robbery of the tavern after they had taken the gun from the security guard on the bus. The cases cited by the State and our research fail to disclose a recognized exception to the general rule for the exclusion of other crimes which is based on the State's need to show that defendants had the ability to commit the offense charged.

It is true that the State had the burden of proving that defendants had the ability to commit the offense, but it met that burden by proving that defendants had a gun at the time of the incident, a fact which is not in dispute, as it was in *People v. O'Connell*, 84 Ill.App.2d 184, 228 N.E.2d 154, cited by the State. Also not applicable, in our opinion, was *People v. Botulinski*, 392 Ill. 212, 64 N.E.2d 486, and *People v. Jennings*, 252 Ill. 534, 96 N.E. 1077. We conclude that the evidence in question served only as a substantial and unnecessary prejudice against defendant in showing that he had acquired the gun for this crime in the course of another robbery. The judgment is therefore reversed and the cause remanded for a new trial.

Not knowing what the outcome of such a trial might be, we cannot here pass on defendant's argument that the sentence should have been concurrent with instead of consecutive to defendant's prior sentence of 10 to 20 years. Because of the smaller number of sentences and the substantially shorter length of one of them, the views we have expressed today in *People v. Blakely*, 7 Ill.App.3d 1012, would not necessarily apply to this case.

Reversed and remanded.

LORENZ, P. J., and DRUCKER, J., concur.