THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KERMIT LEAKS, Defendant-Appellant.

First District (2nd Division)   No. 86—1947

Opinion filed January 31, 1989.

Christopher Cronson, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula M. Carstensen, and Nancy Nolan Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

After being charged with murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2)) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), defendant Kermit Leaks was tried by a jury, found guilty of the included offense of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2) and sentenced to a term of eight years' imprisonment.

Defendant raises the following issues on appeal: (1) whether the trial court erred in admitting evidence of other crimes alleged to have been committed by him, (2) whether the trial court erred in instructing the jury concerning the proof of other-crimes evidence and for failing to admonish the jury of its limited admissibility at the time it was received at trial, (3) whether the prosecutor denied defendant his right to a fair trial by displaying a prior armed robbery file of defendant while questioning him on cross-examination, (4) whether the prosecutor denied defendant his right to a fair trial by attempting to bolster the credibility of a key prosecution witness, and (5) whether defendant was proved guilty of voluntary manslaughter beyond a reasonable doubt. The following are the facts of the case as contained in the record.

On October 20, 1985, in the City of Chicago, defendant shot Ellison Jordan, also known as Flynn, who died a short time later. He was thereafter charged with murder and armed violence.

Starla Whitmore testified at trial that at about 8:30 a.m. on October 20, 1985, she took a .45 caliber semi-automatic pistol that she had stolen from her sister's house to Jordan's residence for the purpose of selling it. When she arrived at his home, she gave the gun to Jordan, who took the clip out and handed it to her. She testified that after she took the six bullets out of the clip and counted them, she put them back into the clip and returned it to Jordan. He placed the clip in his pocket, put the gun in the back of his waistband, and put on a jacket which covered the gun.

Whitmore and Jordan then left Jordan's home and walked across the street to his father's house. While standing on the porch there, Whitmore noticed a small green car driving at a speed slower than that of the other cars. When no one answered at the door, Whitmore and Jordan proceeded down an alley toward Hoyne Avenue where they saw Kermit Leaks. Whitmore stated that Leaks had jumped out from behind a fence and shot twice. Jordan backed away, but Leaks went after him, shooting three or four more times. Jordan fell to the ground after the first two shots and did not pull the gun from his waistband until Leaks had finished shooting. Jordan then began to

shoot at Leaks as Leaks was running away. Whitmore helped Jordan get up and walk through a vacant lot toward Washburn Avenue, where he collapsed.

The defendant's version of the events of that day differed from Whitmore's. He testified that he went over to see his girlfriend, Yolanda Stewart, and that as a result of two previous incidents in which he had been shot, he was frightened about entering the neighborhood. He therefore asked a friend for a gun, which he took with him. According to Leaks, as he was walking across the vacant lot to Yolanda's house, he saw Jordan walking toward him. When Jordan saw him, he shot at and wounded Leaks. Leaks turned around, ran, and fell down, causing the gun to come out of his waistband. Leaks then shot at Jordan, who continued to shoot back at him. Leaks stated that he threw the gun away because he was afraid the police would shoot him if they saw a gun in his hands. Leaks was taken to the hospital where he was interviewed by the police.

Leaks further testified about an incident which occurred in 1984 when he was shot by Jordan and required hospitalization. He also stated that he had previously been told of threats against his life by Jordan.

Police officer James Petrauskus testified that when he arrived on the scene, he saw Whitmore take the gun out of Jordan's hand and try to hide it in her waistband. The officer took the gun from her and found it was empty. Petrauskus observed two bullet wounds in each thigh and two in the chest area and called for medical assistance for Jordan.

Officer James Stingily arrived on Washburn Avenue, one block north of where Petrauskus was, heard multiple gunshots, and observed Leaks running around the corner into Roosevelt Road, and pitching a weapon over a fence into some shrubbery. After Leaks was taken into custody, Stingily recovered the weapon and discovered that all six bullets had been fired. Leaks was then taken to Cook County Hospital.

Detective Golab testified that when he went to the hospital to talk to Jordan, Jordan told him, "Kermit shot me." Golab further testified that in December of 1984 he investigated an incident involving the shooting of Leaks by Jordan. Golab related that Leaks at that time stated that he had robbed Jordan the day before Jordan shot him, that he did not wish to prosecute Jordan, and that "[h]e was going to take care of it himself." On cross-examination Golab said that he did not include this last statement in his report because, since Leaks did not want to prosecute, it was not relevant.

In addition to the defendant's testimony, the defense called Officer Jim Sanders, who testified that he was the evidence technician who processed the scene of the occurrence, and that he found five .45 caliber shell casings scattered over a four- to five-foot area in the lot. Another defense witness, Officer Richard Chenow, employed in the firearms identification unit of the Chicago police department, testified that a .45 caliber automatic weapon would not be ready to fire upon putting a clip into it unless there was already a round in the chamber. Chenow further stated that it would be difficult to load and fire such a gun if one were lying prone on the ground while propped up on one hand.

Yolanda Stewart, who was seven months pregnant with Leaks' child at the time of the shooting, testified that she lived two doors from the vacant lot where the shooting took place. The night before the shooting Leaks had called her to arrange to stop over the next day. Stewart also stated that Tim Leaks, defendant's brother, owned a green Nova at the time of the shooting.

Following closing arguments, jury instructions, and deliberations, the jury found the defendant guilty of voluntary manslaughter.

I

■ The defendant first argues that he was prejudiced at trial by the admission of evidence of prior crimes. The evidence complained of consisted of the testimony, as previously noted, of Detective Golab that Leaks had robbed Jordan on November 25, 1984, that on the following day Jordan shot Leaks, and that Leaks refused to prosecute Jordan for the shooting and said he would "take care of it himself." Prior to the commencement of the trial, defense counsel made a motion *in limine* to preclude the admission of any evidence as to prior crimes except as to the robbery, but the motion was denied.

Defendant contends that the court was confused concerning the admissibility of other crimes and points to several statements by the judge which he claims support his contention. At the hearing held on Leaks' motion *in limine* the court said in pertinent part:

> "Okay. I am going to allow it to come in. Proof of motive, the motive here, I believe, is gang retaliation because of what happened on the prior occasion. It shows an ongoing escalation of a situation. This is further shown when the defendant refused to prosecute when he is the victim. He is going to settle it his way.
>
> The defendant is going to claim self-defense. The jury is the trier of the facts. They should have all the evidence before

them as to what defendant's actual intent was.

> *** I think it also goes in relation to plan. *** I also believe as I indicated before, it goes in to show identity, to show the absence of mistake in identification. *** I believe that it goes in to show who the aggressor was."

Defendant emphasizes that the judge mentioned gang retaliation despite the fact that neither side had suggested this was a gang-related incident. We note, however, that the reference to a gang was made only in the colloquy held at the hearing on defendant's motion *in limine*, which took place, of course, out of the hearing and presence of the jury; accordingly, we fail to perceive that defendant could have been prejudiced thereby. Moreover, although the judge gave several reasons for allowing the evidence of other crimes to be admitted, it does not appear at all to have been done as a result of his being confused. The defendant wanted to use the shooting incident of November 1984 to show his own state of mind, but at the same time he insisted upon excluding any mention of the alleged robbery of the day before. As the judge reasoned:

> "I don't see how the defendant could commit a crime and state [*sic*] and start a chain of events and use a portion of that chain of events as a sword and prevent the State from using the start of that chain of events as a shield. That would be patently unfair.

> Here also the two crimes of November 26th, 1984 and November 25th, 1984 are intermittently related to each other. When the defendant talked about one, he talks about the other. When he refuses to prosecute on the November 26th incident, he gives as a reason the November 25th incident. I believe it goes in."

The decision whether to admit other-crimes evidence is within the sound discretion of the trial court. (*People v. Lieberman* (1982), 107 Ill. App. 3d 949, 955, 438 N.E.2d 516, *appeal denied* (1982), 91 Ill. 2d 576.) As our supreme court stated in *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145:

> "Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. [Citation.] Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. [Citations.] *In fact, this court has held that evidence of other offenses is admissible if it is relevant for any purpose*

*other than to show the propensity to commit crime.*" (Emphasis added.) 98 Ill. 2d at 182.

And this court stated in *People v. Wright* (1986), 140 Ill. App. 3d 576, 579, 488 N.E.2d 1344:

"Evidence of other crimes is admissible where relevant to establish any fact material to the prosecution. [Citation.] Proof of motive is always relevant in a criminal prosecution to show that defendant committed the offense with which he is charged [citation], and evidence which goes to show motive is admissible even though it may reveal another offense. [Citation.] Relevant, admissible evidence need not be excluded simply because it tends to prejudice the accused. [Citation.] The trial court must weigh the relevance of the evidence against its prejudicial effect to the defendant [citation], and its determination of whether evidence is relevant and admissible will not be reversed absent a clear abuse of discretion." 140 Ill. App. 3d at 579.

Nonetheless, defendant maintains, citing *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59, that:

"Evidence of another crime, however, may be used only when the other crime has some threshold similarity to the crime charged. It is this similarity which increases the relevance of the evidence and ensures that it is not being used solely to establish the defendant's criminal propensities." 98 Ill. 2d at 310.

In *Bartall* the defendant was found guilty of murder and armed violence as a result of an incident in which he fired two shots from his automobile and killed a young woman who was standing in an adjacent parking lot. The appellate court reversed the defendant's conviction on the ground that the trial court erred in admitting evidence of another shooting incident which occurred nearby about 20 hours after the homicide. The supreme court, however, held the admission of the evidence was proper to show the defendant's intent in the prior shooting. (98 Ill. 2d at 309.) The principal issue in *Bartall* was whether the defendant shot the victim "with the mental state required for murder or whether he shot her as a result of mere inadvertence or recklessness." (98 Ill. 2d at 310.) The court found "striking similarities" between the second shooting and the prior shooting which resulted in the homicide. In both incidents the defendant fired the same handgun out of the window of his car as he drove at night in the same direction on the same stretch of road. Both incidents were apparently unprovoked, and on both occasions the defendant

was accompanied by his girlfriend. 98 Ill. 2d at 310-11.

As the court stated:

> "We believe that the Preze shooting incident was sufficiently similar to the Quinn homicide to make it admissible on the issue of intent. The evidence of the Preze shooting showed more than the defendant's general propensity to commit crime; it established that on at least two occasions within 24 hours the defendant had acted as a roving, mobile sniper. Whereas the Quinn homicide, standing alone, might have some ambiguity about it, the two incidents, taken together, increase the certainty that the defendant deliberately acted in this fashion. [Citation.] This evidence, taken with other evidence in the case, could provide the basis for an inference that the defendant had the criminal intent required for murder." 98 Ill. 2d at 311-12.

Defendant, in his reliance upon *Bartall*, maintains that no similarity was demonstrated between his prior robbery of Jordan and the shooting in this case. His theory, however, must yield to the obdurate fact that *Bartall* is a case in which other-crimes evidence was used approvingly to show *modus operandi*. (*Bartall*, 98 Ill. 2d at 314; *McKibbins*, 96 Ill. 2d at 186; E. Cleary & M. Graham, Handbook of Illinois Evidence §404.5, at 162 (4th ed. 1984).) It goes without saying that in the instant case, we are not faced with the use of other-crimes evidence in a *modus operandi* setting. We have, instead, an attempt on defendant's part to strip away from the events of November 25-26, 1984, his robbery of Jordan, leaving in stark relief only Jordan's shooting of Leaks, an attempt the trial court did not permit to succeed, for the two incidents are, as the judge explained, inseparably linked. We agree; the one goes with the other like the "flip-side" of a phonograph record—the defendant is not free to choose one side without having to take the other. Nor is the defendant entitled to any expectation that evidence of his robbery of the victim in this case should be excluded simply because it is detrimental to his cause. *People v. Wright*, 140 Ill. App. 3d at 579.

Clearly, evidence of his robbery of Jordan some months before Leaks fatally shot him was not admitted to establish defendant's propensity to commit crime; on the contrary, it was admissible simply for the reason that it was relevant for purposes far removed from any attempt to show such a proclivity. The robbery which led to Jordan's shooting of Leaks, the shooting itself, defendant's refusal to prosecute Jordan, and Leaks' statement to the police that he would "take care" of the matter himself form a seamless web of circumstances from which it is exceedingly reasonable to infer relevance to

the issues (except that of identification, which we shall discuss below) with respect to which the trial judge admitted the evidence. As we have indicated above, our supreme court has held that evidence of other offenses is admissible if it is relevant for any purpose other than to show a propensity to commit crime. *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489; *People v. Dewey* (1969), 42 Ill. 2d 148, 157, 246 N.E.2d 232; see also *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821; *People v. Bartall* (1983), 98 Ill. 2d 294, 310, 312, 456 N.E.2d 59.

■ Consequently, we reject defendant's further contention that the State did not need to rely upon proof of the prior robbery to support its case because the prosecution's retaliation theory could have been established by referring solely to Jordan's shooting of Leaks the prior year. But, the ongoing vendetta of the parties to the subject crime, leading ultimately to their shoot-out in a scene encountered only in movie westerns, leaves no doubt as to the relevance of both the robbery and Jordan's retaliatory shooting of the defendant. The record is clear that the trial judge carefully weighed the relevance of the prior-crimes evidence against its prejudicial effect on the defendant and that he determined the evidence to be relevant and admissible. In light of all of the foregoing, we find no abuse of the judge's discretion.

## II

■ The defendant next argues that the trial court erred in instructing the jury concerning the proof of other-crimes evidence and for failing to admonish the jury of the limited purpose for which it was admitted at the time it was testified to at trial. Defendant contends here, as he does in part I of this opinion, *supra*, that the trial court was confused and took a "shotgun approach" when it ruled on the admissibility of the evidence regarding prior crimes, and that the judge enumerated "various and inconsistent" reasons for admitting the evidence in question. He further states that the jury instruction given by the court compounded this confusion.

The disputed instruction given by the trial judge, Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981), reads as follows:

> "Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's identification, intent, motive and design. This evidence may be considered by you only for the limited purpose for which it was received."

Defendant's attorney objected to this instruction and asked that it be submitted in redacted fashion restricting it to motive only. After some discussion, the judge stated that he would include only intent and motive. However, the court later decided not to give the modified version but to give instead the original proposed instruction, which restored identification and design.

> "Generally, the trial court has considerable discretion in determining the form in which an instruction shall be given. [Citation.] An instruction is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues have been raised by the evidence." (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98, 476 N.E.2d 1378.)

Moreover, an exercise of the trial court's discretion will not be disturbed on review unless it has been clearly abused. *Clarkson v. Wright* (1984), 121 Ill. App. 3d 230, 232, 459 N.E.2d 305.

Defendant contends that the jury in the instant case had no idea as to what evidence was being admitted for a limited purpose or even the precise purpose for which it was being received. Other-crimes evidence can be admitted when it aids in identifying the defendant. (See, *e.g.*, *People v. Houseton* (1986), 141 Ill. App. 3d 987, 490 N.E.2d 1354; *People v. Carter* (1985), 132 Ill. App. 3d 523, 477 N.E.2d 1307; *People v. Blakely* (1978), 8 Ill. App. 3d 78, 289 N.E.2d 273.) But here no issue was ever raised over the fact that the defendant was the person shooting it out with Jordan; indeed, defendant took the stand and so testified. Accordingly, we are constrained to hold that the jury instruction objected to by the defendant was broader than permitted by our case law. (*People v. Blakely*, 8 Ill. App. 3d at 83.) At the same time, however, we are equally impelled to find such error to be harmless, not only because the evidence of defendant's guilt was overwhelming, but also because the overbreadth of the instruction could not possibly have prejudiced defendant, for since identity was never contested, its inclusion was clearly redundant. We cannot agree, though, with defendant's assertion that the trial judge erred by including intent and design. The record herein plainly shows that they were abundantly relevant. Moreover, it seems needless to say that in light of the evidence adduced in this case, both go as much to defendant's state of mind as does motive, about which defendant obviously makes no complaint. In fact, in oral argument before this court, defendant's attorney stated that he urged the trial judge in the instructions conference to redact the instruction to include motive or intent, but not both. We dis-

agree; under the facts in this case, we find the one to be as relevant as the other.

■ Defendant also points out that the judge did not admonish the jury at the time the allegedly objectionable evidence was admitted as to its limited purpose. But defendant fails to acknowledge that he did not request that such an admonition be given. In the absence of defendant's request for such an admonition, no affirmative duty rests on the court to admonish; thus, no error arises from its failure to do so. (*People v. Smith* (1960), 18 Ill. 2d 547, 553, 165 N.E.2d 333; *People v. Allen* (1971), 1 Ill. App. 3d 197, 272 N.E.2d 296.) The *Smith* case also involved a defendant's complaint that evidence of two prior crimes was improperly admitted into evidence. There, the court held that the evidence was properly admitted to prove the element of intent, and that where such evidence is offered, no affirmative duty rests on the court to admonish or instruct the jury except in cases where the defendant affirmatively requests such an admonition. Here, inasmuch as defendant failed to request an admonition at the time the evidence was admitted, no error arose. The holding in *Smith* is in consonance with the discussion of the subject in McCormick: "The interest of an adversary is to be protected, not by an objection to its admission, but by a request at the time of the offer for an instruction that the jury is to consider the evidence only for the allowable purpose." (McCormick, Evidence §59, at 151 (3d ed. 1984).) Moreover, the jury instruction given at the end of the case, which explained to the jury that the evidence was admitted only as to specified limited purposes, was sufficient to protect the defendant's interests.

Defendant cites *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773, to support his contention that the jury instruction on other-crimes evidence was improper in the instant case. In *Connors,* where the defendant was charged with armed robbery, the court allowed evidence to be admitted concerning a second robbery, perpetrated earlier the same day as the crime for which he was tried. On appeal, defendant objected to the admission of the evidence and to the jury instruction which failed to limit the jury's consideration of the other offense. This court stated:

> "The jury instruction concerning such evidence, containing as it did all of the possible exceptions to the other crimes rule, magnified the error. It did not serve to limit the jury's use of such evidence and failed to convey the proper emphasis of the instruction—that such prejudicial evidence was restricted in value." 82 Ill. App. 3d at 319-20.

We do not share defendant's reliance upon *Connors*. There, the defendant objected to the prosecutor's reference in his opening statement to the defendant's other crime. When the trial judge asked the assistant State's Attorney upon what basis he sought to introduce the evidence, "[h]e responded that it was incident to the arrest and that it indicated a plan, propensity, or identification of the offender. The trial court then overruled the defense objection." (82 Ill. App. 3d at 314.) Nevertheless, the defendant made several other objections to the testimony of a police officer relating to the other crime, two of which were sustained as constituting hearsay. However, the court ultimately permitted the officer to testify, over the defendant's objection, that because of a radio message he had received, he recognized the vehicle used in the crime on trial as one that had been stolen earlier the same day.

On appeal, the State abandoned its argument that the testimony was admissible to show propensity, and chose instead to justify it mainly as indicating *modus operandi*. This court, however, rejected the State's attempt "to show on appeal, although not arguing such below, enough similarities in the two crimes to invoke the *modus operandi* exception." (82 Ill. App. 3d at 318.) This court also concluded that the State's concept, also advanced for the first time on appeal, that the defendant's plan or design to use the stolen auto as a getaway car had no support in the record. Moreover, it held that the identification evidence merely served to enhance the credibility of the State's witness. "The details of the other crime and the absence of connecting facts which would bring it within one of the exceptions to the other crime rules made its introduction error." 82 Ill. App. 3d at 319.

In addition, the *Connors* court carefully pointed out that "[e]ach of defendant's contentions [admission of evidence of other crimes, the prosecution's comments on inadmissible evidence, and his comments on defendant's invoking of his right to remain silent], when examined apart from the others, may not constitute reversible error, but when considered in combination, each complicates and compounds the matter. [Citation.] Accordingly, when considered as a whole, we cannot say that such errors were harmless beyond a reasonable doubt or that they did not contribute to the conviction." 82 Ill. App. 3d at 322.

We obviously have far from a *Connors* situation here. To further elaborate on the distinctions between this case and *Connors* would require us needlessly to reiterate all that we have already said in this part II on this issue and on the closely related one discussed in part

I of this opinion. Merely to set forth the facts and the court's discussion of them in *Connors* is to distinguish it from the case at hand. It suffices for us to say here that any evidence relating to Leaks' robbery of Jordan is the necessary corollary of the evidence of Jordan's shooting of Leaks—defendant cannot have it his way. Accordingly, we conclude once more that the evidence was properly admitted, and although the jury instruction was broader than necessary, it was harmless error beyond any reasonable doubt.

### III

■ Defendant's next contention is that the prosecutor denied him the right to a fair trial by improperly displaying, while questioning him on cross-examination, the file of a previous case in which defendant had been charged with armed robbery, a matter unrelated to Leaks' robbery of Jordan, previously referred to herein. Defendant's name and the charge were written on the front of the file in large letters. After the defendant had objected, a conference was held out of the presence and hearing of the jury, at which time defendant moved for a mistrial. Although the State maintained that the folder was face down and held in such a way that the jury could not have seen it, the judge expressed his displeasure with the prosecutor for having brought the file with its obvious lettering into court. Nevertheless, the court indicated that it would not grant a mistrial merely on the basis of the defendant's observation of the file; instead, he offered to poll the jurors one at a time outside the presence of the remainder of the jury. The judge began with the juror who would have been most likely to see the folder, and the following colloquy was had:

> "THE COURT: We just want to ask you a couple of questions. When the State's Attorney was at the podium just now, did you see a file that he had?
>
> MS. GUTIERREZ: Yes.
>
> THE COURT: Did you see what was on the file?
>
> MS. GUTIERREZ: I'm not sure, but I thought it said robbery.
>
> THE COURT: Do you want to ask any questions, Mr. Cronson?
>
> MR. CRONSON: Judge, I don't know what I could ask her.
>
> THE COURT: Mr. State's Attorney?
>
> MR. WILSON: Did you see the name on the file?
>
> MS. GUTIERREZ: No.
>
> MR. WILSON: Then you have no idea what that's about?

MS. GUTIERREZ: No, all I saw was r-o-b.

MR. WILSON: That could even be somebody's name, Robin, Robert?

MS. GUTIERREZ: I mean, that's all I saw, and I just assumed it was robbery. That doesn't mean I'm right.

THE COURT: Mr. Cronson?

MR. CRONSON: Judge, I don't want—I'm afraid to ask any questions because—I don't want to ask any questions about it.

THE COURT: Thank you very much.

Would you bring in the other juror that was sitting in the corner?

Miss Juror, when the State's Attorney was standing at the podium, did you see the file that was in his hand?

JUROR: No."

The judge offered to interrogate the other jurors, but defense counsel indicated that he did not care to continue the questioning since "we already know that one of the jurors saw something." The court denied his motion for a mistrial.

We concur with the trial judge in his decision that this incident did not justify his declaring a mistrial, noting for the record, outside the presence of the jury, that there had been evidence of an alleged robbery already introduced with respect to the November 25 incident between Leaks and Jordan. The judge commented also that the juror closest to the State's Attorney did not see the word "robbery," and even if she had the juror would most likely have deduced the "robbery" to be that of November 25. In light of these facts, the improperly displayed file did not deny the defendant his right to a fair trial.

## IV

■ Defendant further contends that he was deprived of a fair trial by the State's attempt to bolster the credibility of a key prosecution witness in its direct examination of that witness and in its closing statement, in both of which the prosecution referred to Starla Whitmore's prior consistent statement given to the police just after defendant had shot the victim. Defendant claims that the State thus created the inference that the investigating detective and the State's Attorney believed Whitmore. It appears, however, that defendant is somewhat confused, for the record plainly shows that the prosecutor's references were first made in his *redirect* examination of the witness and later in his closing statement. In any event, as the State correctly points out, this issue was waived for purposes of review be-

cause defendant failed to raise it in his post-trial motion for a new trial. As our supreme court has stated, "The general rule is that the failure by a defendant to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review." (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) And as this court has held, "We regard the failure to include alleged errors in the post-trial motion as a waiver of those issues even where objections were made at trial." *People v. Thomas* (1983), 116 Ill. App. 3d 216, 221, 452 N.E.2d 77.

However, assuming, *arguendo*, that the issue has not been waived, the State maintains that no error resulted from the remarks complained of where the conduct was not improper and the trial court sustained defendant's objections thereto. Defendant cites the testimony of Detective Godbold in which he stated that Whitmore told him who shot first, who was struck first, and who fell first. After the officer testified that he called the State's Attorney upon hearing her story, the prosecutor asked him, "Why did you call the State's Attorney?" and the witness answered, "Because in my interpretation there was basis enough." Defense counsel objected and the objection was sustained.

The State points out that "[w]here objections made to improper questions are sustained the improper comment cannot usually be made the basis of reversal." (*People v. Callaham* (1978), 60 Ill. App. 3d 1020, 1026, 377 N.E.2d 171.) Defendant contends that this testimony and the State's alluding to her prior consistent statement served to create the inference that the investigating detective and the State's Attorney vouched for Whitmore's credibility. Defendant cites *People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347, as authority for the proposition that an improperly admitted out-of-court statement used to bolster the credibility of the witness is reversible error when the witness' in-court testimony is crucial. However, the defendant overlooks that the *Smith* court also stated:

> "Evidence of a statement made by a witness out of court but harmonizing with his testimony is inadmissible except where he is charged with the recent fabrication or his opponent raises an inference that he has a motive to testify falsely.
> ***
> Illinois cases are not in precise agreement on what constitutes a charge of recent fabrication. Some courts have found that even a subtle suggestion of fabrication or improper influence will justify the admission of a prior consistent statement." 139 Ill. App. 3d at 32.

■ The State maintains that the defense, in cross-examining Whitmore, insinuated that she was fabricating testimony, citing defense counsel's statement to Whitmore as follows: "I spoke with you at the Illinois Youth Center in Warrenville *** and you told me that you didn't have any idea what you were going to say until you get on this witness stand ***." Moreover, during closing argument defense counsel followed with:

> "What did you say? What did she tell me when I was out there in Warrenville? I went out there and talked to her, and one of the first questions I asked her was, 'Can you tell me what your testimony is going to be when you come into the courtroom on this case.' She was right on the money. She told me, 'I don't have any idea what I'm going to say. I'll figure that out when I get up there on the witness stand,' and that was what she did. That's exactly what she did."

Since defense counsel's cross-examination unmistakably charges the witness with recently fabricating her testimony, the State was within proper bounds to show that Whitmore had not done so in its redirect examination of Whitmore and in its remarking thereon in its closing statement. *Smith*, 139 Ill. App. 3d at 21.

## V

■ The final issue raised by defendant was whether he was proved guilty of voluntary manslaughter beyond a reasonable doubt. The evidence against defendant at trial consisted primarily of the eyewitness testimony of Starla Whitmore. Defendant emphasizes Starla's attempt to hide the gun from the police, that she testified for the State while she was in the custody of the Department of Corrections for aggravated battery of a police officer, her comment to the defense attorney that she didn't know what she was going to say until she got on the witness stand, and discrepancies in her story involving the number of bullets in Jordan's gun and the location of the gun clip. Defendant also stresses Officer Chenow's observation that it would be difficult to operate Jordan's gun with one hand as Whitmore described, and the testimony of the evidence technician who found shell casings dispersed over a four- to five-foot area as opposed to Whitmore's testimony that Jordan did not move around while firing the gun.

We are thus presented with two contradictory versions of the same occurrence, as to which the jury had to determine whom to believe, Whitmore or Leaks. As our supreme court has stated:

> "It is, of course, as we have repeatedly recognized, the jury's

responsibility to resolve factual disputes, assess the credibility of the witnesses, and determine the weight and sufficiency of the evidence [citation], and its judgment will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of defendant remains." *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1396, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364, *rehearing denied* (1984), 467 U.S. 1268, 82 L. Ed. 2d 864, 104 S. Ct. 3563.

And this court has explained, "[t]his is so because the jury, acting in its peculiar capacity as trier of fact, has ample opportunity to observe the demeanor of witnesses, assess their credibility and weigh the evidence." *People v. Callaham* (1978), 60 Ill. App. 3d 1020, 1025, 377 N.E.2d 171.

In the case at bar the jury heard the evidence, weighed it, observed the demeanor of the witnesses, assessed their credibility, and chose not to believe defendant. The jury did not find defendant guilty of murder as he was charged, but they did find him guilty of voluntary manslaughter, which the supreme court has defined as follows:

"A person commits voluntary manslaughter if he kills an individual without .lawful justification under a sudden and intense passion resulting from serious provocation, or if he intentionally or knowingly kills an individual believing the circumstances justify or exonerate the killing, but his belief is unreasonable." *People v. Fausz* (1983), 95 Ill. 2d 535, 539, 449 N.E.2d 78.

We find that the evidence presented to the trial court supports the jury's verdict and that its judgment was neither so unsatisfactory nor improbable as to cause this court to reverse their decision.

Accordingly, for the reasons expressed, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.