THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEREK PITTS, Defendant-Appellant.

Fourth District   No. 4—92—0878

Opinion filed February 14, 1994.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant appeals his conviction for aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(1)) and home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a)(1)). He was sentenced to consecutive terms of eight and six years' imprisonment, respectively. On appeal, defendant contends (1) the trial court erred in refusing to grant a new trial based upon exculpatory evidence which was not presented to the jury; (2) failure to present this exculpatory evidence proved he was denied effective assistance of counsel; and (3) the admission of evidence that he was on intensive probation and admission of certified copies of his prior convictions for retail theft deprived him of a fair trial. We reverse.

At about 1:30 a.m. on July 2, 1991, Terry Beckmeier awoke to find a stranger holding a razor to her throat. The stranger told her he would hurt her two-year-old child if she screamed, and then forced her to engage in sexual intercourse. He then fled, taking the victim's purse, but leaving behind a key ring. This key ring contained a key which fit the lock of defendant's apartment door.

Beckmeier told police she could not see her attacker's facial features, only his silhouette. She described him as a thin, black man with short hair, no facial hair, and smelling of hard liquor. At trial she modified this description, saying she was unable to tell whether he had facial hair. She was shown a photo array and picked out two men, one of them defendant, saying they each had the same facial shape as her attacker. Even though she said she would never forget the sound of his voice, she was unable to identify anyone at the lineup by appearance or voice.

Just before 9 a.m. on the day of the attack, James and Martha Cavanaugh pulled into the parking lot of a video repair store and saw a man pounding on the door trying to get in. James exited the car and approached the store, whereupon the man handed him a checkbook and asked him to turn it in to the store owner. According to Martha, who remained in the car, the man said he had found the checkbook in the parking lot and wanted to leave it for the store

owner. The checkbook belonged to Terry Beckmeier. Martha contacted Beckmeier at work, and the police came to pick up the checkbook. James was unable to identify the man with the checkbook in a lineup. Martha, however, picked defendant out of a photo array. Later, she identified defendant in a lineup and confirmed this identification in court.

Only two pieces of evidence connect defendant to the crime—the key found in the victim's apartment and Martha's identification of defendant as the person in possession of the stolen checkbook. Forensic analysis of blood, semen, and hair traces were inconclusive. Two Negroid head hairs were found on the victim's T-shirt. Analysis confirmed these hairs did not come from defendant. At trial, it was explained that a young Afro-American boy came to the victim's house sometime before the attack. It was suggested that the head hair found on the victim's T-shirt came from the boy, but no tests were done to confirm this possibility. The Cavanaughs testified that the man with the checkbook wore a baseball cap. Defendant presented two witnesses who testified that defendant never wears a hat. Finally, the victim told police her attacker was a thin man with no facial hair. Testimony was heard that defendant had a beard on the day of the attack. Furthermore, a remark during trial indicated that defendant was not a thin man but, when defense counsel asked defendant his weight during redirect examination, the trial court sustained an objection to this testimony on grounds that it was beyond the scope of direct examination.

Defendant told police he had lost the key to his apartment, but was not sure when. At trial, he claimed it was sometime around June 12, 1991. There was no evidence that he reported this to his building manager, and he claimed he just left the door open. The manager's dogs apparently kept out any strangers. Defendant contends he was just beginning a new job with a detasseling crew for Northrup King. His probation officer confirmed that he had asked permission to leave his home early on the morning of July 2, 1991, to begin work. Defendant contends he was at home on July 2, 1991, until 5 or 6 a.m., whereupon he left for work. In closing arguments, defense counsel concluded that defendant could not have been seen by the Cavanaughs because he was out in the fields working that day.

One day before trial, on March 19, 1992, the State received a discovery answer from defense counsel which listed names of two prospective alibi witnesses, Maurice Moore and Dave Starr. Defense counsel interviewed Moore prior to trial, and Moore agreed to testify that he had worked with defendant on July 2, 1991, on the detasseling job for Northrup King. The foreman on this job, known to the

workers as Dave Starr (not his real name), was located by a State investigator on the second day of trial. He told the investigator that defendant may have been working on July 2, 1991. He advised the investigator that he would check his records and get back to him.

The State immediately notified defense counsel that Starr may have exculpatory evidence to offer. Defense counsel decided it was too late to issue a subpoena, no motion for continuance was filed, and no effort was made to seek a recess in order to talk with this witness. Starr eventually faxed documents of defendant's work history to the State a few days after trial. Unknown to defense counsel, Moore had outstanding warrants for his arrest. Two subpoenas had been issued, but Moore, fearful of arrest, managed to avoid being served.

At a post-trial hearing, defense counsel argued for a new trial to allow the jury to hear testimony from Moore and Starr. Alternatively, defense counsel moved for a continuance on his motion for a new trial. At the time of this hearing, defense counsel still had not contacted Starr or issued a subpoena. Moore, who had previously ducked service of subpoenas, was by this time in custody and available to testify. No affidavits were attached to defendant's motion for a new trial. Defense counsel characterized his failure to seek a continuance or recess at trial as a tactical decision.

■ We find defendant was denied effective assistance of counsel and therefore do not address whether defendant deserves a new trial on the basis of newly discovered evidence. The determination of whether a defendant was denied effective assistance of counsel is a two-part test. First, defendant must show that counsel's performance was deficient, such that errors were so serious that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. Second, defendant must show he was prejudiced. Counsel's errors must be so serious as to deprive defendant of a fair trial, "a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

Testimony that defendant was in possession of the victim's checkbook a few hours after the attack was highly inculpatory in a case based entirely upon circumstantial evidence. If Martha's testimony is impugned by evidence of defendant being at work, this case is much more evenly balanced. The Supreme Court requires us to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. The defendant must overcome the presumption that the challenged action might, under the circumstances, be considered sound trial strategy. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) We find no hint of sound trial strategy in counsel's actions.

■ Next, defendant contends he was denied a fair trial by the admission of evidence that he was on intensive probation at the time of the alleged offense. The State filed a pretrial motion to admit evidence of other crimes and, at a hearing on this motion, argued that testimony of defendant's probation officer was necessary to convincingly prove the address of defendant. The State claimed the testimony was relevant for the limited purpose of proving identity. Defense counsel offered to stipulate to defendant's address, but the State rejected the offer. The State would also present testimony of defendant's building manager, who would confirm defendant's address and that the key found in the victim's apartment did in fact fit the lock on defendant's door. Defense counsel argued that the probation officer's testimony was cumulative of the building manager's and was offered for the sole reason of admitting evidence of defendant's prior crimes. The trial court admitted the probation officer's testimony and instructed the jury that evidence of other offenses could only be considered for the issue of defendant's identity.

Evidence of other crimes is admissible if it is relevant to establish any fact material to the prosecution, other than the propensity of defendant to commit a crime. When such evidence is offered, it is incumbent upon the trial judge to weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of the evidence may have upon defendant. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860.) Erroneous admission of evidence of other crimes ordinarily calls for reversal. *People v. Mason* (1991), 219 Ill. App. 3d 76, 80, 578 N.E.2d 1351, 1354.

The building manager's testimony was required in order to prove the key fit defendant's door lock. This testimony convincingly proved that defendant lived at the address in question. The only conceivable purpose in presenting the probation officer's testimony was to advise the jury of defendant's criminal past. Where there is no question as to defendant's identity, it is reversible error to admit evidence of other crimes for the purpose of identifying defendant. (See *People v. Blakely* (1972), 8 Ill. App. 3d 78, 83-84, 289 N.E.2d 273, 277.) The trial court erred in admitting the probation officer's testimony.

Under direct examination, defendant was asked to explain the reason for his probationary status, and he replied it was for retail theft. The State interjected, requesting that the response be clarified. Defense counsel asked whether this probation was for a second or third offense, and defendant replied that it was. At the close of trial, the State sought to admit into evidence certified copies of defendant's three convictions for retail theft. The State claimed this evidence was

admissible for purposes of rebuttal. Defense counsel objected, claiming defendant had admitted his prior convictions and, in response, the State actually agreed that the evidence was cumulative. The State then argued that, as rebuttal evidence, the convictions were admissible for the purpose of examining defendant's credibility. The trial court admitted the evidence, instructing the jury that evidence of a witness' prior convictions may be considered only as it may affect the believability of the witness.

On appeal, the State argues that defendant's testimony was unclear as to the number of times he had been convicted of shoplifting. The State contends that admission of these certified copies of convictions into evidence clarified this matter and was admissible as impeachment. Furthermore, the State claims if there was error it was harmless, since evidence against defendant was so overwhelming. On direct examination, defendant agreed that he had two or three prior convictions for retail theft. We find no need for impeachment on this point, nor do we find evidence of guilt so overwhelming that we may consider an argument of harmless error. Admission of the certified copies of defendant's prior convictions for retail theft was error.

Reversed and remanded.

COOK, J., concurs.

JUSTICE STEIGMANN, dissenting:

Because the majority agrees with defendant's claim that he was denied effective assistance of counsel, it reverses his conviction and remands for a new trial. In my judgment, the majority's determination *on the record before us* is erroneous. Although defendant's claim of ineffective assistance of counsel may have merit, he should be required to establish that merit at a hearing on a post-conviction petition, at which time an appropriate record could be made.

The entire premise underlying defendant's claim of ineffective assistance of counsel is that "Dave Starr" told the State's investigator *over the phone* that "defendant may have been working" out of town on the date in question, thus providing an alibi. Starr himself never testified or provided an affidavit, nor has he ever provided anyone with the records upon which he claimed to be able to tell after the fact (some eight or nine months later) that defendant was engaged in an out-of-town detasseling operation. If in fact Starr is mistaken or if his records are not as good as he claimed, then this court has reversed the defendant's conviction based on nothing more than unfounded speculation.

The majority might think that defense counsel should have made greater efforts to establish defendant's detasseling employment and might also speculate that corn companies maintain pay records (supposedly a necessity for Internal Revenue Service (IRS) purposes). If defense counsel's greater efforts would have or could have *resulted* in obtaining such records (assuming they exist), then I would likely agree with the majority that those efforts should have been expended. However, what if, despite the IRS requirements, such records do not in fact exist?

In *People v. Kunze* (1990), 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296, this court addressed defendant's claim that his attorney provided ineffective assistance of counsel as follows:

> "Where, as here, consideration of matters *outside of the record* is required in order to adjudicate the issues presented for review, the defendant's contentions are more appropriately addressed in proceedings on a petition for post-conviction relief. (Ill. Rev. Stat. 1987, ch. 38, pars. 122—1 through 122—8.) We therefore decline to adjudicate in this direct appeal [defendant's] contentions concerning the alleged incompetence of [defendant's] trial counsel. An adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney-client privilege no longer applies." (Emphasis added.)

In the present case, as in *Kunze*, the record is insufficient to permit adjudication of defendant's claim of ineffective assistance of counsel. The majority erred by not following this court's own advice in *Kunze* of waiting for this matter to be adjudicated through defendant's petition for post-conviction relief.

I add that I agree with the majority that evidence of defendant's prior convictions was mishandled. Absolutely no reason existed to allow the State to bring out that defendant was on intensive probation. This information served only to "dirty up" defendant in the eyes of the jury. Assuming that the State needed the probation officer's testimony that he saw defendant in his apartment on the night in question, all the State legitimately needed to obtain was information that this witness (the probation officer) had reason to go to defendant's apartment and see him there. The jury did not need to be told why he went there, who the witness was, or what the connection was between the two.

Interestingly, in *Kunze* I wrote a specially concurring opinion suggesting procedures trial courts should use to avoid the problems shown by this case regarding impeachment of defendants by prior convictions. (*Kunze*, 193 Ill. App. 3d at 728-36, 550 N.E.2d at 297-303

956

(Steigmann, J., specially concurring).) Unfortunately, the trial court in the present case did not follow those suggestions. Had the court done so, no issues regarding the handling of defendant's impeachment by his prior convictions would now be on appeal before us.

I view the mishandling of this impeachment evidence so seriously that on this ground alone I might be inclined to reverse and remand for a new trial. However, the majority, although citing this matter as error, never says that it constitutes the basis for the majority's reversal of defendant's conviction. Accordingly, because the only ground cited by the majority for reversing and remanding is that defendant was denied the effective assistance of counsel, I respectfully dissent.