NO. 4-01-0106

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Macon County­

ANDREW L. ANDERSON, ) No. 00CF571

Defendant-Appellant. )

) Honorable

) Timothy J. Steadman,

) Judge Presid­ing.

JUSTICE MYERSCOUGH, delivered the opinion of the court:

In August 2000, a jury convicted defendant, Andrew L. Anderson, of three counts of aggravated criminal sexual assault.  720 ILCS 5/12-14(a)(2) (West 2000).  In October 2000, the trial court sentenced defendant to three consecutive 15-year prison terms.  In November 2000, defendant filed a motion to reconsider which the trial court denied after hearing.  Defendant appeals, arguing that (1) the trial court erred in granting the State's motion 
in
 
limine
; (2) the evidence failed to show defendant guilty beyond a reasonable doubt of three separate acts of aggravated criminal sexual assault; (3) reversible error occurred when Officer Hubbard testified that defendant came to mind after he was given a description of the suspect; (4) the trial court erred in failing to give Illinois Pattern Jury Instruction, Criminal, No. 2.02 (4th ed. 2000) (hereinafter IPI Criminal 4th) prior to the jury commencing deliberations; (5) the trial court abused its discretion in sentencing defendant; and (6)(a) section 5-8-4(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-4(a) (West 2000)) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11), and (b) the issue that triggered the mandatory consecutive sentences pursuant to section 5-8-4(a) of the Unified Code should have been submitted to the trier of fact and proved beyond a reasonable doubt
.  We affirm.

I. BACKGROUND

In April 2000, the State charged defendant, by information, with home invasion (count 1) (720 ILCS 5/12-11 (West 2000) (effective  until June 1, 2001)) and three counts of aggravated criminal sexual assault(counts II through IV)(720 ILCS 5/12-14(a)(2) (West 2000)).  In relevant part, the State alleged that defendant by the use of force (1) placed his penis against the victim's (a) vagina (count II), (b) anus (count III), and (3) placed his fingers in the victim's vagina (count IV).  In June 2000, defendant indicated that he would use the defense of voluntary intoxication and that he might call Dr. Georgia Cuddeback as an expert witness.  Cuddeback stated in a letter that it was her opinion that defendant was unable to form the specific intent to perform the alleged offense because of the beer and cocaine defendant consumed on the night of the incident.

In August 2000, the State moved to dismiss the home invasion count (count I) and filed a motion 
in
 
limine
 seeking to prohibit the defense from introducing any evidence concerning the defense of voluntary intoxication.  The State argued that aggravated criminal sexual assault was a general intent crime, and the affirmative defense of voluntary intoxication was not available for general intent crimes.  After hearing argument, the trial court granted the State's motion.  The trial court then conducted a two-day jury trial.

L.J., the victim, testified that she was married to a pastor with the First General Baptist Church and lived at 1505 West Decatur.  On the night of the incident, she was home alone and went to bed at approximately 11:30 p.m.  She fell asleep and was semi-awakened by two flashes of a lighter in the doorway of her bedroom.  She did not fully wake up because she assumed it was her husband returning home from work.  A man came over to the bed and lay down on the other side.  The man rolled over next to her and began rubbing her body all over--rubbing up and down her legs and under her shirt.  At that point, she realized it was not her husband.  She told the man that he had the wrong house and told him to get out of the house.  The defendant then got on top of her.  She was able to see the man and identified defendant as this man.

While defendant was on top of her, she grabbed the cordless phone from the nightstand.  Defendant tried to kiss her.  She turned away, and he began to lick her face and ears and kiss her neck.  She tried to use the phone, but defendant took and threw the phone on the floor.  She then tried to knee him in the groin.  He held her legs down with his legs, and she tried to break his nose.  She knocked off his glasses so she could poke out his eyes.  He was holding her down and trying to pull down her sweatpants.  She tried to wiggle out from under him to get to the phone on the floor.  He pulled her on top of him, turned her over on top of him, held onto her, and tried to undo his pants.  He unbuckled his pants.  The two struggled and fell to the floor.  He kept trying to pull down her pants.  He pulled her pants down to her knees and tried to guide his penis into her vagina.  She testified that he had his penis on her vagina.  She told him that she had acquired immunodeficiency syndrome (AIDS), that no one would have anything to do with her, and she could not believe he was doing this.  She testified that these statements stopped him.  He then started inserting his fingers into her vagina and "was going down like he was going to perform oral sex on me."  At that point she finally got the phone, turned it on, and began singing to him "Jesus Loves Me."  She testified that she began singing "because I didn't know what else to do, because I thought it was *** going to happen.  I thought that he was going *** to rape me."

He stopped, asked her what she was doing, and saw that she had the phone.  He took the phone and threw it under the bed.  She then asked if they could get back on the bed.  He pulled her up on the bed, which enabled her to pull up her sweatpants.  She yelled, "Fire! Help! There's a fire!"  Defendant started hitting the victim and told her to shut up.  He hit her on the face and told her not to yell again.  She yelled again, and he hit her again.  He tried to pull down her sweatpants again and became angry and frustrated.  Defendant then took her and turned her over onto her stomach.  As he turned her over, he pulled her sweatpants and underwear off and threw them off the bed.  He kept his hand under her and pulled her up by the buttocks so that she was on her knees and attempted to insert his penis into her anus.  She felt him touch her anus with his penis.  At that time, her husband arrived home.

She testified that defendant did not have an erection, but that his penis did come into contact with her vagina and anus.  She admitted that she spoke with Michael Beck, a detective with the Decatur police department (department), the following day and told Beck that defendant was "rubbing his penis on [her] bottom."  She testified, though, that when she used the term "bottom", she was referring to her anus.

The victim's husband testified that when he returned home, he heard noises upstairs.  He ran upstairs and struggled with the intruder.  During the struggle, the intruder repeatedly stated that he had the wrong house.  The victim's husband told defendant to leave.  He identified defendant as the intruder.

Steve Hagemeyer, a police officer with the Department, testified that he responded and went to the victim's house and spoke with the victim and her husband.  He testified that the victim had swelling on her forehead, on the left side of her face, and a cut on her hand.

Frank Hubbard, a detective with the Department, testified that he has been with the department for 10 1/2 years and assigned to the detective division for 4 1/2 years.  He testified that he was working on the night of the incident when he was informed of a sexual assault in the 1500 block of West Decatur.  Hubbard testified that he lives in the west end and was familiar with several individuals from that area.  When given a description of the suspect, Hubbard immediately thought of defendant.

The defense objected and, outside the presence of the jury, moved for a mistrial.  The defense argued that because Hubbard was a police officer and indicated that he knew the defendant, Hubbard, in essence, suggested to the jury that defendant had prior contacts with law enforcement, which was highly prejudicial to defendant.  The State argued that simply because an officer might know someone by description does not imply that person has a criminal background.  The trial court denied the motion, stating:

"[o]nly thing the witness indicated thus far was that he resides in this particular area of Decatur, that he was familiar with others who reside in the area, that he received this description, and he believed that the defendant fits that description.  There was no indication whatsoever that this knowledge was acquired by way of his employment as a police officer, but rather as a resident of the west end of Decatur."

The jury returned and Hubbard continued to testify.  He testified that he went to defendant's home, where he found him.

Beck testified that he interviewed the victim at the hospital.  He observed that she had swelling to the left side of her face and swelling behind her left ear.  She had a slight cut to the right side of her head and two lacerations to her right hand, one that required seven stitches.  

Beck testified further that he also interviewed defendant.  Defendant told Beck that he entered the victim's home believing no one lived there.  He went upstairs, entered the bedroom, and saw a woman lying on the bed.  He got in bed with the woman and began kissing her and fondling her breasts.  He believed that he had sexual intercourse with her; however, he did not ejaculate.  He believed he performed the sex act "doggy style."  In addition, defendant gave a written statement indicating that he went to a sports bar and drank approximately 15 beers.  He left the bar, bought "some crack, and smoked that."  He also stated: 

"I went inside the house and went upstairs.  There was a girl laying [
sic
] on the bed, and I got into bed with her.  We started fighting.  I tried to have sex with her.  I think I had sexual intercourse with her. 

*** [G]irl's *** husband came home.  We started fighting.  I got up and went home.  

I know this situation is all my fault.  She had nothing to do with it.  I hope I didn't hurt her or her husband.  This was one of these nights you wish you could have back, and something like this never happened."

On cross-examination, Beck admitted that defendant never stated that he had inserted any of his fingers into the victim's vagina or his penis in her anus.  On redirect, Beck testified that he did not specifically ask defendant those questions.

The State rested.  Defendant moved for a directed verdict, which the trial court denied.  Defendant then took the stand and testified.  His testimony was generally similar to his written statement.  Defendant testified that he placed his penis against the victim's vagina.  He attempted to place it in her vagina, but he did not have an erection.  He denied that he placed any of his fingers in her vagina and denied penile contact with her anus.  The defense rested and moved for a directed verdict at the close of all the evidence, which the trial court denied.

The trial court conducted an instructions conference.  The parties gave closing arguments, and the trial court read the jury instructions.  The jury went to the jury room to deliberate.  After approximately 10 minutes, the trial court pointed out that IPI Criminal 4th No. 2.02 had not been given, which reads:

"The charge against the defendant in this case is contained in a document called the information.  This document is the formal method of charging the defendant and placing the defendant on trial.  It is not any evidence against the defendant."

Defense counsel moved for a mistrial.  The trial court denied the motion, noting that the jury had been in the jury room for only about 10 minutes and had not yet received any written copies of the jury instructions or exhibits.  The trial court called the jury back to the courtroom.  The court explained to the jurors what had occurred.  The trial court told the jurors the following:

"What I'm going to do is read that instruction to you at this time; and then, we will provide you with written copies of all the legal instructions in the case.  Again, you should not single out a certain instruction and disregard others."

The trial court then read the instruction.  The jury returned to the jury room to deliberate.  When the security officer, acting as a bailiff, took the written jury instructions and the exhibits to the jury room, the jury informed him that it had reached its verdict.  The trial court held a conference with the parties, informed them of this information, and permitted additional comments on the issue.  The defense informed the court that it was standing on its original motion for a mistrial regarding the jury instruction, especially in light of the relatively short period of time that it took the jury to decide after IPI Criminal 4th No. 2.02 was read to it.  The jury returned to the courtroom and found defendant guilty of all three counts of aggravated criminal sexual assault.

In September 2000, defendant filed a posttrial motion arguing in part that the trial court erred in granting the State's motion 
in
 
limine
 and prohibiting the expert testimony of Dr. Cuddeback.  The trial court denied this motion.  In October 2000, the probation department filed a presentence report that indicated that defendant was 34 years old.  His criminal history dated back to October 1987, when he received a fine for public indecency.  In August 1993, defendant was fined for driving under the influence of alcohol.  In November 1995, he received 12 months' probation for resisting a peace officer.  In June and August 1997, he was fined for criminal trespass to land.  This report also indicated that defendant used alcohol, cannabis, and cocaine daily.  Defendant filed an evaluation from Cuddeback that set forth her opinion that defendant's alcohol and cocaine consumption on the night of the incident suspended his power of reason and rendered him incapable of forming a specific intent to perform the offense.

The trial court conducted a sentencing hearing.  The State proffered the victim-impact statement as evidence in aggravation.  In addition, the State called the victim's husband to testify.  He testified that, other than an odor of alcohol, he saw no other indication that defendant was under the influence of alcohol or drugs.  Defendant's mother and father testified in mitigation.  They stated that defendant was borderline in terms of intelligence.  Defendant did, however, earn an associate degree from Richland Community College in sociology and psychology, although it took him five years to do so.  They were aware of his alcohol use.  Defendant read his statement in allocution to the court wherein he expressed his apology to the victim and her family and hoped for their forgiveness.

After hearing evidence, arguments of counsel, considering the presentence report, the victim-impact statement, the circumstances of the offense, and defendant's statement in allocution, the trial court sentenced defendant to three consecutive 15-year prison terms.  The trial court found, in relevant part:

"[T]hat all three offenses were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and all three charges in this case were violations of 720 ILCS 5/12-14.  So, under Illinois law, the sentencing shall be served consecutively.

   *** Defendant shall serve 85 [%] of his sentence.  

*** [T]he facts and circumstances of the case are extremely egregious.  *** [T]his was a terrible, horrendous, experience that the victim underwent at the hands of [defendant].

I believe there reaches a point when the [c]ourt has a duty to protect the public from somebody who's capable of this kind of conduct, and I think I would be remiss in my responsibility if I did not fashion a sentence that insured that this sort of situation will never happen again with regard to [defendant].

*** [Defendant] asks for forgiveness.  I think that's a good thing that he has shown some remorse.  ***

I suppose to some extent, I can provide mercy if I think it's appropriate, and it's only because of his expression of remorse, primarily, that it will not be a maximum sentence in arriving at the sentence.  I have considered the fact that 85 [%] of a sentence will be served, and I've considered the fact that the defendant is 34 years of age at the present time."

Defendant filed a motion to reconsider sentence, which the trial court denied.

This appeal followed.

II. ANALYSIS

A. Motion 
In
 
Limine

Defendant argues that the trial court erred in granting the State's motion 
in
 
limine
, which prohibited evidence of defendant's intoxication.  Specifically, defendant contends that the affirmative defense of voluntary intoxication (720 ILCS 5/6-3(a) (West 2000)) does apply to the offense of aggravated criminal sexual assault, and the trial court, therefore, erred in granting the State's motion and prohibiting Cuddeback's testimony as to the affirmative defense.  Evidentiary rulings lie within the trial court's sound discretion, and this court will not disturb them unless the trial court abused its discretion.  
People v. Ransom
, 319 Ill. App. 3d 915, 919, 746 N.E.2d 1262, 1267 (2001).

Defendant acknowledges that the statutory provision setting forth the offense of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 2000)) does not provide any specific intent as an element of the offense.  However, defendant looks to the language in section 4-3(a) of the Criminal Code of 1961 (Criminal Code) for direction.  This section states, in part:

"(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in [s]ections 4-4 through 4-7.

(b)*** If the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in [s]ections 4-4, 4-5[,] or 4-6 is applicable."  720 ILCS 5/4-3(a), (b) (West 2000).

Because no mental state is prescribed in the statute concerning aggravated criminal sexual assault, defendant contends that the mental states prescribed in sections 4-4 (intent) and 4-5 (knowledge) are applicable to the offense of aggravated criminal sexual assault, and the affirmative defense of voluntary intoxication, therefore, does apply to the offenses of aggravated criminal sexual assault.

This defense is not available to the defendant on the charges of aggravated criminal sexual assault since it is a general intent crime.  
People v. Roesler
, 195 Ill. App. 3d 1007, 1012-13, 552 N.E.2d 1242, 1246 (1990); 
People v. Bofman
, 283 Ill. App. 3d 546, 551, 670 N.E.2d 796, 799 (1996).  However, we recognize that in 
People v. Simms
, 192 Ill. 2d 348, 375, 736 N.E.2d 1092, 1114 (2000), the Supreme Court of Illinois recently reaffirmed its holding in 
People v. Terrell
, 132 Ill. 2d 178, 209, 547 N.E.2d 145, 158 (1989).  In 
Terrell
, the supreme court held that since the aggravated criminal sexual assault statute does not prescribe a mental state applicable to the offense, a mental state of intent, knowledge or recklessness must be implied.  
Terrell
, 132 Ill. 2d at 209, 546 N.E.2d at 158; see also 
People v. Burton
, 201 Ill. App. 3d 116, 119-21, 558 N.E.2d 1369, 1372-73 (1990).  These courts, however, did not address the precise issue before this court--namely, whether an intoxicated or drugged condition can be raised as an affirmative defense to aggravated criminal sexual assault.  We need not answer this precise question because, in light of the facts in the present case, the affirmative defense is not available to defendant.

To assert an intoxication defense, a defendant must show that his drunkenness was so extreme that it suspended his power of reason and rendered him incapable of forming a specific intent to commit the offense.  If the record indicates that defendant acted with any purpose or rationality, the defense is unavailable.  
Roesler
, 195 Ill. App. 3d at 1013, 552 N.E.2d at 1246.  In the present case, defendant was not entitled to the affirmative defense given his recollection of events--the number of beers he consumed, the time he left the bar, the fact that he went into the victim's house and had the forethought to use his lighter to produce light so he could see, the furniture that he saw in the other upstairs room, the manner in which he thought he had intercourse with the victim--"doggy style--" the encounter with the victim's husband and that he remembered doing all these things.  See 
People v. McCoy
, 281 Ill. App. 3d 576, 584, 666 N.E.2d 805, 811 (1996) (a defendant may not rely on the defense of voluntary intoxication if he admits remembering the offense).  We conclude, therefore, that the trial court did not err by granting the State's motion 
in
 
limine
. 

B. Sufficiency of the Evidence

Defendant argues that the evidence failed to show beyond a reasonable doubt that he committed three separate acts of aggravated criminal sexual assault.  Defendant concedes that the evidence may be sufficient to prove a single count of aggravated criminal sexual assault; however, he contends that the evidence is insufficient to prove that three separate assaults took place.  Specifically, defendant argues that if the only time that his hand came in contact with the victim's vagina was when he was attempting to insert his penis into her vagina, then the evidence would not justify two separate counts of aggravated criminal sexual assault--one for vaginal contact with the hand and one for vaginal contact with the penis--because they arose from a single act.

It is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evidence of his guilt.  
People v. Brink
, 294 Ill. App. 3d 295, 299-300, 690 N.E.2d 136, 139 (1998).  Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact.  
Brink
, 294 Ill. App. 3d at 300, 690 N.E.2d at 139.  In considering a defendant's challenge to the sufficiency of the evidence, the relevant question is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Oaks
, 169 Ill. 2d 409, 457-58, 662 N.E.2d 1328, 1349-50 (1996).  Therefore, a reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses.  
Brink
, 294 Ill. App. 3d at 300, 690 N.E.2d at 139.  We conclude that the State presented sufficient evidence to sustain defendant's convictions.

To prove sexual penetration, it is only necessary to establish "any contact, however slight."  720 ILCS 5/12-12(f) (West 2000).  We acknowledge that the victim's testimony conflicted with defendant's testimony.  However, the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict, even though it is contradicted by the accused.  
People v. Novotny
, 41 Ill. 2d 401, 411, 244 N.E.2d 182, 188 (1968); see also 
Brink
, 294 Ill. App. 3d at 300, 690 N.E.2d at 139.  Here, defendant admitted that he had contact with the victim's vagina with his penis.  The victim testified that the defendant inserted his fingers in her vagina and had contact her with anus.  The jury is charged with the responsibility of weighing the credibility of witnesses and resolving any conflicts and inconsistencies in their testimony.  
People v. Wittenmyer
, 151 Ill. 2d 175, 194, 601 N.E.2d 735, 744 (1992).  The jury found the victim's testimony credible.  Because the jury is in a superior position to assess witness credibility, we will not reverse that decision.  We note that defendant attempts to cast some doubt on the victim's testimony by relying on the fact that when she spoke with Beck, she did not say anything to him about defendant attempting to have anal intercourse with her.  However, the victim testified that when she spoke with Beck and used the term "bottom", she was referring to her anus.  

C. Hubbard's Testimony

Defendant next argues that he was prejudiced by Hubbard's testimony that when he was informed of the allegation of criminal sexual assault and was given a description of the suspect, defendant came to mind.  Specifically, defendant contends that Hubbard's testimony suggested to the jury that defendant was known to him from prior police contacts.  Defendant acknowledges that the purpose of Hubbard's statement may not have been to prove defendant's propensity to commit crimes, but the unavoidable inference was that defendant had a prior criminal history.  The State argues that the purpose of Hubbard's testimony was to show why defendant was arrested.  Therefore, no implication arose that defendant had a criminal record and there was no error.  Alternatively, the State argues that if error occurred, it was harmless.  We agree with the State.

We acknowledge that a police officer's testimony of his or her prior acquaintance with a defendant should be avoided unless somehow relevant.  
People v. Bryant
, 113 Ill. 2d 497, 514, 499 N.E.2d 413, 421 (1986).  Moreover, we agree with defendant's proposition that erroneous admission of evidence of other crimes ordinarily calls for reversal.  
People v. Pitts
, 257 Ill. App. 3d 949, 953, 629 N.E.2d 770, 773 (1994).  However, here, no admission of any other crimes was made nor did any inference of such arise from Hubbard's testimony.  

It is within the trial court's discretion to decide whether evidence is relevant and admissible, and the trial court's decision shall not be overturned absent a clear abuse of that discretion resulting in manifest prejudice to the defendant.  
People v. Jones
, 269 Ill. App. 3d 925, 933, 647 N.E.2d 612, 618 (1995), 
overruled
 
in
 
part
 
on
 
other
 
grounds
, 
People v. Smith
, 188 Ill. 2d 335, 346, 721 N.E.2d 553, 560 (1999).  In light of the context in which Hubbard's statement was made, we find nothing improper in the trial court's admission of Hubbard's statement.  The record shows that Hubbard's purpose for making that statement was not to imply prior criminal activity but to explain how it was defendant came to mind based on the description he received--namely, that Hubbard knew defendant because they both lived on the west side of Decatur.

D. Jury Instruction

Defendant next argues that the trial court erred in failing to give IPI Criminal 4th No. 2.02 prior to the commencement of jury deliberations.  Therefore, he was denied a fair trial and a new trial should be ordered.  The State argues that defendant has forfeited this issue because he neither tendered the instruction to the trial court nor objected to the instructions.  Alternatively, the State contends that the error was harmless.  We agree with the State.

The burden of preparing criminal jury instructions is primarily on the parties.  
People v. Glass
, 239 Ill. App. 3d 916, 925, 606 N.E.2d 655, 662-63 (1992).  The trial court has no obligation to give instructions not requested by counsel, and no party may raise on appeal the failure to give any instruction unless he tendered it to the court.  
Glass
, 239 Ill. App. 3d at 925, 606 N.E.2d at 663.  We note that in this case, the trial court, 
sua
 
sponte
, raised the issue that IPI Criminal 4th No. 2.02 had not been tendered.  Generally, failure to object at trial to an error in jury instructions forfeits the issue for appeal.  
Glass
, 239 Ill. App. 3d at 925, 606 N.E.2d at 663.  Therefore, absent of plain error, the issue is forfeited.  
Glass
, 239 Ill. App. 3d at 925, 606 N.E.2d at 663.  We have reviewed the record and conclude that the evidence against defendant was overwhelming and the error was not so grave or fundamental that defendant was denied a fair trial.  Therefore, defendant has forfeited the issue for review on appeal.

Moreover, if there had been no forfeiture and we were to consider the issue, we would find that any error was not reversible error.  Here, the trial court conducted a jury instruction conference wherein it was decided which instructions were to be given.  Neither party tendered IPI Criminal 4th No. 2.02 nor objected because it was not tendered.  Defendant did object, however, after the trial court 
sua
 
sponte
 raised the fact that it was not given.

Although error, the trial court's failure to give this written instruction initially does not automatically result in a finding that defendant's constitutionally protected right to a fair trial has been violated.  A reviewing court must look at all of the circumstances to determine whether defendant received a fair trial, including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors.  
People v. Kitchen
, 159 Ill. 2d 1, 39, 636 N.E.2d 433, 450 (1994).

Here, even though the jury was not given the instruction initially, we find that the trial court cured any error when it subsequently gave the instruction.  Only a short period of time passed prior to the court's giving the instruction.  In addition, the trial court had previously instructed the jurors that the evidence they should consider consisted of only the testimony of the witnesses and the exhibits that the court received. 

E. Sentence

1. 
Excessiveness
 
Claim

Defendant next argues that the trial court abused its discretion in sentencing him to 45 years' imprisonment, 15 years for each count to be served consecutively.  In addition, defendant argues that the trial court ignored the mitigating factors with the exception of defendant's remorse.  The State responds that the trial court properly concluded that the sentences were necessary to protect the public and that the sentences were within the statutory range; and, therefore, the trial court properly exercised its discretion.  We agree with the State.

The trial court is in the best position to make a reasoned decision as to the appropriate punishment in each case, and we will not reverse the trial court unless it has abused its discretion.  
People v. Nussbaum
, 251 Ill. App. 3d 779, 780-81, 623 N.E.2d 755, 757 (1993).  This court gives great deference and weight to the sentence the trial court imposes.  
Nussbaum
, 251 Ill. App. 3d at 781, 623 N.E.2d at 757.  Aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12-14(d)(1) (West 2000)) that carries a statutory sentence of not less than 6 years and not more than 30 years (730 ILCS 5/5-8-1(a)(3) (West Supp. 1999)).  Here, the trial court stated that it considered the factors in aggravation, as well as in mitigation, and it sentenced defendant to only 15 years out of a possible 30 years for each offense.  The trial court's 15-year sentence for each offense is clearly within statutory limits.  In addition, it is presumed that the trial court considered the evidence in mitigation absent any contrary indication in the record.  
People v. White
, 237 Ill. App. 3d 967, 970, 605 N.E.2d 720, 722 (1992).  In light of the seriousness of the offenses, we conclude that the trial court considered the mitigating factors and did not abuse its discretion in sentencing defendant.

Defendant contends, however, that this incident arose out of a single occurrence--"a single sexual encounter that occurred over several minutes."  Moreover, defendant contends that "[h]ad the [d]efendant committed a series of criminal sexual assaults, each constituting a single count of criminal sexual assault, each occurring on a separate day and each occurring to a separate victim, there would have been a much more grievous situation."  We disagree.

"To the victim, each rape was 'readily divisible and intensely personal; each offense is an offense against a person.'  [Citation.]  To permit a defendant to rape an individual several times over a period of time in the same place with little or no break between each act deprecates the heinous and violent nature of each act and the effect each has upon the victim."  (Emphasis omitted.)  
People v. Segara
, 126 Ill. 2d 70, 77, 533 N.E.2d 802, 805 (1988).

Defendant correctly states that the Illinois Constitution requires courts to determine penalties according to the seriousness of the offense and the potential for rehabilitation.  Ill. Const. 1970, art. I, §11.  A proper balance must be struck between the protection of society and the rehabilitation of the defendant.  
People v. Cox
, 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547 (1980).  However, a court is not required to give the defendant's rehabilitative potential more weight than the seriousness of the offense.  
White
, 237 Ill. App. 3d at 969, 605 N.E.2d at 722.  The jury found defendant guilty of three separate offenses of aggravated criminal sexual assault.  Based upon the record, we conclude that the trial court adhered to our constitution's mandate and imposed an appropriate sentence for each account accordingly.

2. 
Consecutive
 
Sentences

Defendant also argues that his consecutive sentences violate 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  We disagree.  Our supreme court recently held that "
Apprendi
 concerns are not implicated by consecutive sentencing."  
People v. Wagener
, 196 Ill. 2d 269, 286, 752 N.E.2d 430, 441 (2001); see also 
People v. Williamson
, 319 Ill. App. 3d 891, 903-05, 747 N.E.2d 26, 36-37 (2001) (the rationale in 
Apprendi
 does not apply to consecutive sentences).  As we explained in 
Williamson
, consecutive sentencing does not increase any of defendant's individual sentences for an offense beyond the statutory maximum, but determines the manner in which those sentences will be served.  Here, defendant was sentenced well within the prescribed statutory range.

III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

KNECHT, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

Defendant was given consecutive sentences on three counts of aggravated criminal sexual assault, alleging that his penis touched the victim's vagina, his penis touched the victim's anus, and his fingers intruded into the victim's vagina.  Probably every sexual assault will involve a number of touchings and intrusions, and the question raised here is the prosecutor's power to multiply charges, to convert a single aggravated criminal sexual assault into three such assaults.  See 
People v. Cox
, 53 Ill. 2d 101, 106, 291 N.E.2d 1, 4 (1972) (applying a rule of lenity when the judiciary is asked "to make each stick in a faggot a single criminal unit [(
Bell v. United States
, 349 U.S. 81, 83, 99 L. Ed. 905, 910, 75 S. Ct. 620, 622 (1955))]."   

In response to defendant's argument that this incident arose out of a single occurrence, "a single sexual encounter that occurred over several minutes," the majority cites 
Segara
, where the supreme court upheld two convictions of aggravated criminal sexual assault (vaginal intercourse and fellatio) apparently arising out of the same incident, stating that "[t]o the victim, each rape was 'readily divisible and intensely personal.'" 
Segara
, 126 Ill. 2d at 77, 533 N.E.2d at 805, quoting 
Pruitt v. State
, 269 Ind. 559, 565, 382 N.E.2d 150, 154 (1978).  The supreme court upheld the vacation of six other convictions of aggravated criminal sexual assault, however, which may have been more like the additional charges here.  
Segara
, 126 Ill. 2d at 77, 533 N.E.2d at 805.  Even as to the two convictions it upheld, the supreme court stressed that it was dealing with 
concurrent
, not 
consecutive
 sentences.  "[T]he sentences can only run concurrently and, as such, there is no enhancement-of-penalty claim and no double jeopardy claim."  
Segara
, 126 Ill. 2d at 78, 533 N.E.2d at 806.

At the time 
Segara
 was decided, section 5-8-4 provided a safety valve, avoiding difficult multiplication of charges and prosecutorial discretion issues:  If defendant were convicted on a number of charges committed as a part of a single course of conduct, there could be no consecutive sentence; if defendant were convicted on a number of charges 
not
 committed as a part of a single course of conduct, consecutive sentences were possible in the discretion of the court.  Ill. Rev. Stat. 1973, ch. 38, par. 1005-8-4(a).  All that has changed.  Effective July 1, 1988, section 5-8-4 was amended to read that, in the case of certain offenses committed as a part of a single course of conduct, "the court 
shall
 enter sentences to run consecutively."  (Emphasis added.)  Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-4(a).  The supreme court recognized this amendment created "something of an anomaly," mandating consecutive sentences in the least serious multiple-offense situation.  
People v. Bole
, 155 Ill. 2d 188, 198, 613 N.E.2d 740, 745 (1993).  The court concluded that it was bound to follow the statute "[a]lthough this might simply have been an oversight by the legislature."  
Bole
, 155 Ill. 2d at 198-99, 613 N.E.2d at 745.  

In response to 
Bole
, the legislature amended section 5-8-4(b) in 1997 to eliminate the trial court's discretion to impose concurrent sentences when the enumerated offenses are committed in separate courses of conduct.  
People ex rel. Waller v. McKoski
, 195 Ill. 2d 393, 399, 748 N.E.2d 175, 178 (2001).  Consecutive sentences are now mandatory whether there is a single course of conduct or separate courses of conduct, if a defendant is convicted of one of the triggering offenses listed in section 5-8-4(b).  
McKoski
, 195 Ill. 2d at 399, 748 N.E.2d at 178-79.  The 1997 amendment eliminated the inconsistency noted in 
Bole
, but did nothing to alleviate concerns regarding multiplication of charges.  In 
McKoski
, defendant was convicted of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 1998)), a triggering offense under section 5-8-4(b).  
McKoski
, 195 Ill. 2d at 395, 748 N.E.2d at 176.  The trial court, however, imposed concurrent sentences.  
McKoski
, 195 Ill. 2d at 397, 748 N.E.2d at 177.  The supreme court allowed the State's Attorney to bring an original action in 
mandamus
 to correct the error and remanded with directions to impose consecutive sentences.  The supreme court suggested, however, that the trial court still had the discretion to determine the length of each sentence.  
McKoski
, 195 Ill. 2d at 402, 478 N.E.2d at 180.  (Three consecutive sentences of 8 1/3 years would be similar to three concurrent sentences of 25 years.)  It is important to note that multiplication of charges from a single incident was not an issue in 
McKoski
, that the three convictions "related to three separate incidents, involving three different minors, which occurred in Lake County between December 1, 1997, and August 1, 1998."  
McKoski
, 195 Ill. 2d at 395, 478 N.E.2d at 176.

The supreme court expressed its concern with multiplication of charges when it adopted the "one act one crime" analysis in 
King
.  
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977).  As originally written, 
King
 addressed only concurrent sentences; it was not necessary to address consecutive sentences because the legislature had resolved that problem with the original version of section 5-8-4.  See 
People v. Rodriguez
, 169 Ill. 2d 183, 192-94, 661 N.E.2d 305, 309-10 (1996) (Heiple, J., specially concurring).  As the legislature has tampered with section 5-8-4, however, the supreme court has expanded its analysis in 
King
, applying it even in cases of consecutive sentences.  
Rodriguez
, 169 Ill. 2d at 186-87, 661 N.E.2d at 307; 
People v. Priest
, 297 Ill. App. 3d 797, 802, 698 N.E.2d 223, 226 (1998).  In a concurrent-sentence situation, the supreme court has recently reaffirmed its position "that each separate blow of a mop handle could support a separate conviction," reversing the additional conviction, however, because the charges did not differentiate the separate blows (stab wounds).  
People v. Crespo
, No. 86556, slip op. at 8 (February 16, 2001).  "Rather these counts charge defendant with the same conduct under different theories of criminal culpability."  
Crespo
, slip op. at 6.

The double jeopardy clause of the fifth amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const., amend. V; see also Ill. Const. 1970, art. I §11 (all penalties shall be determined "according to the seriousness of the offense").  The United States Supreme Court most recently has determined the constitutional rule on cumulative punishment to be a question of legislative intent.  Where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under 
Blockburger
, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  
Missouri v. Hunter
, 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 544, 103 S. Ct. 673, 679 (1983); see also 
Fitzsimmons v. Norgle
, 104 Ill. 2d 369, 374, 472 N.E.2d 802, 805 (1984) ("the law does not permit a double enhancement of a penalty without a clear indication of a legislative intent to accomplish that result").  Does section 5-8-4 "specifically authorize" cumulative punishments in an aggravated criminal sexual assault case where the victim's body is touched several times or in several places by different parts of the defendant's body?  "At best, the operative language of the sentencing statute is muddy."  
McKoski
, 195 Ill. 2d at 405, 748 N.E.2d at 182 (Kilbride, J., concurring in part and dissenting in part).  

Without any limitation imposed by statute, the prosecutor may choose to charge a single aggravated criminal sexual assault as 2, or 20, aggravated criminal sexual assaults, and obtain a mandatory consecutive sentence on each one.  The Code identifies perhaps 14 different ways in which "sexual penetration" can occur.  720 ILCS 5/12-12(f) (West 2000).  The purpose of that definition is to provide flexibility in charging, given the variety of ways in which a sexual assault can occur.  There is no indication, however, that the listing of each type of sexual penetration was intended to designate a separate offense.  Nor should a touching with the right hand, followed by a touching with the left hand, and another touching by the right hand be considered three separate aggravated criminal sexual assaults.  
Cf
. 
People v. Myers
, 85 Ill. 2d 281, 426 N.E.2d 535 (1981) (
concurrent
 sentences where defendant twice moved knife from first victim's neck to threaten a second victim; although invasions were closely related in time and in the same area of the neck, the acts were not one physical act).            

As the supreme court pointed out in 
McKoski
, a trial court does have discretion, within the permissible statutory sentencing range, to determine the length of each sentence.  
McKoski
, 195 Ill. 2d at 402, 748 N.E.2d at 180.  Still, a prosecutor may insure a sentence of, say, 60 years by charging defendant with 10 counts of aggravated criminal sexual assault.  See 730 ILCS 5/5-8-1(a)(3) (West 2000) (statutorily prescribed Class X sentence is 6 to 30 years).  We would be very concerned if a trial court imposed a sentence of 31 years for a Class X felony.  Such a sentence, which exceeds the statutory maximum, would be void and subject to attack at any time.  We should be even more concerned with multiplication of charges, which in this case results in a sentence of 45 years for a Class X felony.

The State argues the prosecutor does not have absolute discretion, that there still is a safety valve here, that the "aggregate of consecutive sentences for offenses that were committed as part of a single course of conduct" shall not exceed the maximum terms authorized for the two most serious felonies involved.  730 ILCS 5/5-8-4(c)(2) (West 2000).  The State argues that with a Class X felony the maximum extended term is 60 years and therefore the maximum aggregate of consecutive terms is 120 years.  See 
People v. Myrieckes
, 315 Ill. App. 3d 478, 482, 734 N.E.2d 188, 192 (2000).  I respectfully suggest that a limit of 120 years on consecutive sentences is no limit at all.

The legislature could not allow the penalty for a criminal offense to be whatever the prosecutor might choose.  Prosecutors are routinely given discretion to decide whether to charge under one of two statutes with similar elements.  Where the statutes "plainly demarcate the range of penalties that prosecutors and judges may seek and impose," the power delegated is no broader than the authority they routinely exercise.  
United States v. Batchelder
, 442 U.S. 114, 126, 60 L. Ed. 2d 755, 766, 99 S. Ct. 2198, 2205 (1979).  Where the prosecutor actually makes the sentencing decision, however, as where minimum sentences are involved, there is more force to the constitutional argument.  W. LaFave & J. Israel, Criminal Procedure §13.7(a), at 650 (2d ed. 1992).  A statutory scheme which allows a prosecutor unfettered discretion to prosecute under one of two statutes which are identical except for the penalty is highly objectionable.  W. LaFave & J. Israel, Criminal Procedure §13.7(a), at 650 (2d ed. 1992).  The same is true here.  Under section 5-8-4 as it presently exists, and by adopting a narrow definition of what constitutes a "single act," the prosecutor has absolute power to determine what sentence a particular defendant will receive, free of any interference by the court and without any limitation imposed by the legislature. 

The majority avoids this question by dividing it into easily answered subordinate issues: (1) it is up to the jury to determine the sufficiency of the evidence, including whether there were "three separate acts" of aggravated criminal sexual assault; (2) the sentences were within the statutory range, and, therefore, the trial court properly exercised its discretion, sentencing defendant to only 15 years out of a possible 30 years for each offense; and (3) 
Apprendi
 concerns are not implicated by consecutive sentencing, which does not increase any of defendant's individual sentences for an offense beyond the statutory maximum.  I respectfully suggest that giving a prosecutor unfettered discretion to multiply charges on which consecutive sentences must be imposed is inconsistent with the fundamental principles of our system of justice.